421 So.2d 931 (1982)
Dr. Henry G. SIMON
v.
Sarah Allen SIMON.
No. 13012.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1982.
On Rehearing October 20, 1982.
Writ Denied December 20, 1982.
*932 David Band, Jr., Sidney J. Parlongue, New Orleans, for plaintiff-appellant.
Sylvan J. Steinberg, Bronfin, Heller, Feldman & Steinberg, New Orleans, for defendant-appellee.
Henry W. Kinney, III, New Orleans, for notary and appraisers.
Before REDMANN, C.J., and SCHOTT and KLEES, JJ.
REDMANN, Chief Judge.
In this suit to partition community property, a divorced husband on March 30, 1981 appealed from a judgment of March 18, 1981 that fixed notary's and appraisers' fees for an inventory of the community and "ordered ... that [the ex-spouses] pay the foresaid amounts to such parties. Such amounts are to be recognized as a debt of the community."
The ex-husband's briefs argued primarily the validity of a June 10, 1981 judgment making absolute the notary's rule to have the community property sold by the sheriff. The June 10 judgment was not appealed, however, by the ex-husband's appeal of March 30. Accordingly, the questions of whether the notary had authority to bring a rule to sell the property and, if not, whether the ex-wife's ratification of his doing so is the equivalent of the ex-wife's having brought the rule and related questions arising from the June 10 judgment are not before us.[1]
What is before us is the March 18 judgment. The ex-husband argues that the fixing and ordering payment of the costs of inventory was premature because prior to "final termination" of the partition suit, when La.R.S. 13:843.1 provides for payment of costs "[n]ot later than" 120 days after final termination of a civil suit. We have considerable doubt that that provision is controlling. The ordinary final judgment for costs is certainly executable after 30 days, C.C.P. 2123, unless a suspensive appeal is taken. Furthermore, in a complex succession that might take years to administer, the notary and appraisers whose work is all done at the outset should not have to wait years to be paid.
*933 Nevertheless we agree that the exhusband should not, at this stage of the proceedings, be obliged to pay any part of notary's and appraisers' fees.
We first observe that it was the ex-wife who, instead of merely filing the "detailed descriptive list" of assets authorized by La. C.C.P. 3136, elected to ask in her petition of May 14, 1976 to have her lawyer appointed notary to take a formal inventory. (The trial judge denied that request, but on a later motion by the wife selected another notary.)
We second note that the ex-husband's June 18, 1976 answer to that petition annexed a list of the remaining community assets that reasonably complied with C.C.P. 3136 as well as a list of assets the ex-spouses had already divided (including one piece of immovable property they had sold, splitting the proceeds).
We third note that, for purposes of a partition by judicial sale, C.C.P. 4607 does require advertisement as in sales under execution, but does not require appraisement. Indeed, if an appraisement is made, C.C.P. 2336's rule that a sale under seizure must bring two-thirds of the appraised value is not applicable; "[n]o one can be compelled to hold property with another," C.C. 1289, and a co-owner is entitled to have the judicial sale of property indivisible in kind for the highest bid, regardless of appraisement, Ventress v. Brown, 30 La.Ann. 1012 (1878), or even without appraisement, Martin v. Nassan, 14 Orl.App. 207 (La.App.1917). Thus the appraisement in a formal inventory is of no value for purposes of a partition by judicial sale.
We fourth note that the assets of the community are very few. The husband's list's apparent omission of three or four items could have been corrected by rule to traverse, C.C.P. 3137.
In the absence of some showing that the ex-husband somehow necessitated the formal inventory, we conclude that the costs of the inventory must be borne by the ex-wife because she unnecessarily caused those costs, and the clear, basic principle of the law is that "the party whose behavior unjustifiably causes costs to be incurred ought to pay them," Bowman v. New Orleans Pub. Svc., Inc., 410 So.2d 270 (La.App. 4 Cir.1982).
The judgment of March 18, 1981 is amended to cast the ex-wife alone for the costs of the inventory. Costs of this appeal are to be equally divided.

ON REHEARING
The original record in this matter contained no petition for nor order of appeal from the June 10, 1981 judgment and we therefore believed no appeal had been taken from that judgment. In fact the ex-husband did appeal from that judgment, as he establishes by certified copy of a timely order of appeal. We therefore grant rehearing to consider that appeal, without a repetition of the oral argument already had on its subject matter.
The law on the partition of a marital "partnership or community of acquets and gains," C.C. 2399, in force at the time of the trial court action in this case (applicable also to any partnership, then C.C. 2890) must be derived from La.C.C.P. 4601-4630, "Partition Between Co-owners" (made applicable to all partitions by C.C. 1290). Many of those provisions seem inapt for the partition of a marital community, and the difficulty of applying them presumably prompted La.Acts 1982 No. 439, enacting La.R.S. 9:2801, to govern partitions of communities. At the time of this proceeding, however, the lawyers and the trial court had the difficult task of sorting through a mass of statutory material which sometimes does not afford clear direction.
We pretermit the ex-husband's argument about the meaning of C.C.P. 4605 in a marital community partition and his contention that a notary appointed to partition a community has no standing to seek a judicial sale. On other grounds, we conclude that the judgment ordering all inventoried property to be sold must be reversed on its merits.
The civil code articles on the partition of a succession are made applicable to C.C. *934 1290 to the partition of a community estate. Those articles provide each heir "may demand in kind his share of the movables and immovables," art. 1337, except insofar as it is necessary to sell them to pay succession debts. The articles provide that the first step in a partition is the settling of accounts owed by the heirs to the succession, C.C. 1349. Then the "active mass" of all the property of the succession, including debts due to the succession by the heirs and others, C.C. 1356, less deductions of debts (and collations) due to the heirs, C.C. 1359, is divided into lots, C.C. 1364, including, "if possible, in each lot, the same quantity of movables, immovables, rights and credits of the same nature and value," C.C. 1365 (emphasis added). "When the lots are of unequal value," receipt of a lot of greater value obliges the recipient to pay money to restore equality, C.C. 1366. The lots are "drawn for by the coheirs," C.C. 1367.
The codal scheme for the partition of an estate does not consider whether each separate asset is divisible in kind, but whether the estate is divisible in kind by the distribution of its assets themselves into shares or lots for the heirs. The code expressly anticipates that the distribution of the assets themselves may produce preliminarily unequal shares among the heirs, and that could not occur if only assets individually divisible in kind were distributed in kind and assets not individually divisible in kind were all sold so as to divide their cash proceeds with mathematical equality.
Under the law prior to Acts 1982 No. 439 (ignoring the brief life of C.C. 2369.1, enacted by Acts 1981 No. 751), a marital community's estate is to be divided in kind under the rules applicable to a succession. The first step is to settle the debts owed to the community by the separate estates of the spouses, C.C. 1349. Then the active mass of the community estate is formed (including the debts owed by the spouses as well as by others), C.C. 1356. Then there are deducted the debts owed by the community to the separate estates of the spouses, C.C. 1359, "and the balance remaining forms the mass to be divided," C.C. 1360, into two lots (as if for two heirs), C.C. 1364, including, "if possible, in each lot, the same quantity of movables, immovables, rights and credits of the same nature and value," C.C. 1365. The spouses then draw for the lots, C.C. 1367, and if the lots are of unequal value the recipient of the more valuable lot, in order to restore equality, must either pay the other spouse half of the difference in value, C.C. 1366, or else "be charged with the payment of a larger portion of the debts" of the community, C.C. 1371. (Otherwise, each spouse owes, as between themselves, half of the debts, C.C. 1371 and former C.C. 2409.)
The law's plain preference is partition in kind. C.C. 1339 forces sale only on grounds of the practical indivisibility of whatever is sought to be partitioned, whether the entire estate of a decedent, or an entire former marital community, or a single co-owned asset. If co-owners had nothing to partition but a typical city house on a lot of ground only large enough for the house, as a practical matter that asset is not itself divisible and therefore must be divided by selling it and dividing its proceeds. But if, for example, there are two such houses and two equal co-owners, partition in kind is possible, notwithstanding that one house is worth more than the other. Perhaps if such an indivisible house constitutes nearly all of the value of a community then the community may be not conveniently divisible in kind into two lots (although perhaps the other assets might be divided into lots and only the immovable sold). But when, as here, a community contains two immovables, the circumstance that each immovable considered alone may be indivisible in kind, or that one is more valuable than the other, does not make the community indivisible in kind.
The order for partition by licitation is not justified on the record before us, and it is therefore reversed.
We remand for partition in kind. Moreover, because nothing has been done in respect to the partition except an inventory whose values are presumably outdated by the intervening period of almost two years *935 in any case (see C.C. 1325), we rule that the partition is to be governed by the procedure established by Acts 1982 No. 439, enacting R.S. 9:2801.
The 1982 procedure is basically the same as the previous procedure described above. The principal differences are (1) that each spouse must file a sworn list of all assets and their values and of all liabilities, and each must then traverse or concur as to each item of the other's list, and (2) that the court may allocate assets and liabilities to a particular spouse (instead of having the spouses draw lots). These differences should accommodate, rather than impede, an equitable partition of this community. For example, it makes more sense to allow the trial judge to allocate the equipment of a medical office used by a spouse who is a doctor to that spouse, rather than to allot it by chance to the spouse who is not a doctor.
In any event, the statute is procedural and we conclude that it now governs save as to partitions already so far under way that it would cause unnecessary expense or delay.
The judgment of June 10 is therefore reversed and the matter remanded for further proceedings consistent with this opinion. In all other respects rehearing is refused.
NOTES
[1] La.C.C.P. 4607 would still allow the parties, "[a]t any time prior to the sale," to agree to nonjudicial partition, if that is their desire.