425 So.2d 379 (1982)
Johnny Lafurn JACKSON, Plaintiff-Appellant,
v.
Janice Moon JACKSON, Defendant-Appellee-Appellant.
No. 82-411.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
*381 Colleen McDaniel, Lafayette, for defendant-appellee-appellant.
Roy & Hattan, L. Lane Roy, Lafayette, for plaintiff-appellant.
Before CULPEPPER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This appeal questions some twelve rulings made by the trial court relating to the determination of community assets and liabilities and the settlement of the claims of the parties, in this protracted community property settlement litigation.
Janice Jackson (now remarried, she will hereafter be called Ms. Bell) sued Johnny L. Jackson for separation on May 17, 1977. A judgment of separation was signed June 19, 1978, followed by a divorce granted February 12, 1979 based on the husband's adultery.
Ms. Bell filed for a partition of the community in 1978 praying for a partition in kind where appropriate and by licitation where necessary. A court-appointed notary public was ordered to inventory the community. The return of the inventory was filed into the record in December, 1979. It showed that the assets consisted only of movables. It listed the liabilities. Jackson thereafter prayed for a partition by licitation of the movables. Ms. Bell answered by attacking the inventory as being incomplete.
A hearing was subsequently conducted on the traversal of the inventory and judgment was rendered on April 5, 1982, accepting and homologating the inventory except as to twelve items, some of which were included in the inventory and some of which were not. By ruling on these twelve disputed items and homologating the remainder of the inventory, the trial court obviously intended to establish the assets and liabilities of the community and the settlement of the claims of the parties, leaving for a later determination the appraisal of the community assets and the final partition, i.e., the allocation of the assets and liabilities to the parties.
Jackson appealed certain of the twelve rulings, and Ms. Bell answered complaining of the others.
At the outset we note that the judgment of the trial court is not an appealable partial final judgment as defined by La.C. C.P. art. 1915 since it does not fall within the situations enumerated by that article. See Lee v. Lee, 375 So.2d 769 (La.App. 4th Cir.1979). However, by exercising our supervisory *382 jurisdiction, this court has authority to review the case. See Lee v. Lee, supra at p. 772, fn. 6, and p. 773, fn. 7, and Butler v. Butler, 228 So.2d 339 (La.App. 1st Cir.1969). We chose to do so in the interest of justice, hoping that we can thereby avert another appeal, and also hoping that we can help this case toward its conclusion, for it has been already five and a half years in litigation and it needs to be terminated.
We will now discuss the twelve complaints of error which are before us.

1. The community home and rental derived therefrom.
Jackson sold the family home to his brother in May, 1977, seven days before Ms. Bell filed her suit for separation. Jackson's brother thereafter let the house out for rent. The home was sold to third parties in October, 1979. Ms. Bell appeared in this latter sale as a vendor and shared in the proceeds. At the same time she formally ratified the May, 1977 sale to Jackson's brother.
The trial court concluded that having ratified the sale to Jackson's brother and having joined in and shared in the proceeds of the subsequent sale to third parties, Ms. Bell was precluded from demanding a further accounting. We find no error in this ruling.

2. The F&J Amoco property.
This immovable, a major item of the community, was purchased by Jackson and his business partner, Cox, for the price of $64,000 in 1976, during the existence of the Jacksons' marriage. On May 20, 1977, three days after the suit for separation was filed, an instrument was recorded in the Lafayette Parish Conveyance Records transferring Jackson's half interest in the property to his partner Cox for a recited consideration of only $2,000. This instrument was dated May 10, which was seven days before the filing of the separation. The property was burdened by a one year old mortgage in the original amount of $51,000. There was no language in the Jackson to Cox conveyance that required the latter to assume the mortgage debt.
Two years passed after the above transaction. Then there occurred a transfer of a half interest in the property from Cox to one A.J. Arsenault. The recited consideration was again only $2,000, but this time the purchaser assumed the mortgage which then had a balance of about $43,000. It turned out, not surprisingly, that the A.J. Arsenault named in that deed was in fact the new wife of Jackson.
Ms. Bell sought an accounting from Jackson on the ground that both transactions were simulations done to defraud her. The trial court, after considering the testimony of the parties, the suspect appearance of the transactions, and Jackson's credibility, found as follows:
"The court concludes that the sale of the F&J Amoco property was a simulation and the court will, therefore, annul the sale."
We do not interpret the quoted language to mean that the district court was declaring the sales were simulations and nullities affecting title. To achieve that result an action in declaration of simulation must be brought and all parties with record interests in the property are indispensable parties.[1] In the instant proceedings neither Cox nor Arsenault were parties. We interpret the trial court's language to mean simply that the sale is to be overlooked for purposes of an accounting to the community by Jackson. This means that Jackson must account to the community for the value of the property based on its evaluation as of the time when the case is tried on its merits, and also for the net income derived therefrom subject to such credits he can prove he is entitled to based on payments made by him or on his behalf on the mortgage.[2] We believe that the trial court's ruling as we have interpreted it is correct.

*383 3. Storage fees.

A number of the movables have been in storage since the separation. Jackson has been paying the storage fees. Ms. Bell contends that this expense should be paid altogether by Jackson since he has had the constructive use of the movables. The trial court concluded that storage costs were a necessary expense for the preservation of the community assets. He found this item to be a community debt. We agree that this cost is a liability of the community.

4. Community savings accounts.
There were two of these, both in the name of John T. Jackson. The first, a $10,000 account which was clearly community funds, referred to as the "Blue Chip" savings account in Guaranty Bank & Trust Company, was withdrawn in its entirety by Jackson shortly before the separation. After listening to the testimony and the failure of Jackson to explain how this money was spent, the trial court concluded that this was an item for which Jackson must account to the community. We find no error in that ruling.
The other savings account was in the amount of $4,000 in the American Bank & Trust Company. The court found this was the separate property of Jackson having been deposited two years after the legal separation. We agree with that ruling also.

5. Certain electricity and phone bills.
Jackson complains that these bills should have been found to be community obligations. The bills were dated several months after the community ceased to exist. Jackson offered no evidence to show that they were incurred prior to the separation. The trial court correctly found these bills to be Jackson's separate liabilities.

6. The proceeds from the sale of real property in Florida.
During the marriage Jackson bought some real estate in Florida. The record reveals that he sold it in late 1980 for $13,500 less expenses of the sale in the amount of $376.50. For the stated reason that it had no jurisdiction over immovable property in Florida, the trial court refused to consider this item. This was error. The proceeds of the sale constituted movable property over which the trial court has jurisdiction. See Succession of Lodato, 250 So.2d 792 (La.App. 4th Cir.1971). The proceeds are community property and Jackson must account to the community for that item.[3]

7. Certain trust accounts for the children.
Jackson claims that the trial court erred in finding that certain trust accounts for the children were the separate property of the children. He argues that the trust accounts had terminated, thus becoming community property. We disagree.
Trusts for the benefit of the Jackson children had been created by the maternal grandparents. Under the provisions of the trust accounts, the plans are to continue as long as the grandparents were living and were not affected by the dissolution of the community. The plan does not provide that the withdrawal of funds in whole or in part terminated a trust as Jackson argues. We agree with the lower court that the trusts *384 had not terminated and that the funds were properly found to be the separate property of the children.

8. A Cessna airplane.
Jackson purchased a one-half interest in this plane during the existence of the community for $9,200. He sold his interest to his partner Cox on May 10, 1977, that busy day seven days before the separation, for $2,000. Although expressing some doubt that Jackson's half interest could have depreciated so much in the eight months he was an owner of the plane, the trial court nevertheless found the sale to be legitimate, responding to Ms. Bell's complaint that this sale, too, was fraudulent. The court made a finding, however, that the $2,000 Jackson received from the sale was a community asset, and that he must account for it. After a careful examination of the record we cannot state that the trial judge was clearly wrong in this determination.

9. Proceeds from the sales of two motor homes.
Finding against the contention of Ms. Bell, the court concluded that she could not participate in the proceeds of two mobile homes. We agree.
The trial court, concluding that "there is no responsibility concerning these motor homes", denied the claims of both parties and their conflicting demands concerning this item. The evidence is confusing, but it appears that while the marriage was intact Jackson and his business partner Cox were engaged in an enterprise called F&J Mobile Homes which owned four motor homes under heavy mortgages. The profit from this venture was to come from rental of the mobile homes. After the marital separation this business had financial troubles and was itself dissolved, with Jackson taking title to two mobile homes and Cox taking title to the two others. Jackson subsequently divested himself of title to his motor homes at a price which he contended was less than the outstanding balances of the mortgages owed on them. As opposed to Ms. Bell's contention that she should share in the rental income and the proceeds of the sale, Jackson contended that she should also share in the resulting loss from the sale. The trial court resolved this factual dispute by concluding that the community books balanced on these items, and that they constituted neither an asset nor a liability.
We find that the trial court was not clearly wrong in this factual determination.

10. Certain miscellaneous items.
The trial court also held that a desk formerly belonging to Ms. Bell's grandfather, together with a silver place setting for twelve, twelve chairs and seven wine glasses and a tray which her brother had given her, were the separate property of Ms. Bell. We agree. Her undisputed testimony revealed that these objects were in the possession of Jackson but were in reality her separate property. Jackson offered no evidence to contradict her testimony in this regard.

11. A promissory note to American Bank in the amount of $1,967.50.
Jackson contended that this promissory note was a community liability. The trial court found that it was the separate debt of Jackson. We have been unable to find this promissory note in the evidence, nor can we find any testimony in the record on which a determination of the status of this debt can be based. Therefore, upon remand the trial court shall allow the taking of evidence concerning this promissory note to determine whether it is a community obligation or the separate debt of Jackson.

12. Attorney fees.
The trial court determined that each party is responsible for his own attorney's fees. Jackson contends that attorney fees should be assessed to the community.
We agree with the trial court. In a contested partition proceeding neither party is entitled to an award of an attorney's fee. Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir.1978), writ denied 381 *385 So.2d 1222 (La.1980). The parties failed to offer any evidence as to the amount incurred for attorney's fees incident to their separation and divorce proceedings.
The judgment appealed from is, accordingly, affirmed, with two exceptions: (1) the judgment refusing to consider the proceeds of the Florida property is reversed, and judgment is rendered declaring the net proceeds, $13,123.50, from the sale of that property to be an asset of the community, to be accounted for by Jackson, and (2) on remand, the trial court shall allow evidence regarding the status, whether a community liability or the separate indebtedness of Jackson, of the promissory note in the amount of $1,967.50 owed to American Bank. Each party shall be responsible for one-half the costs of this appeal. The case is hereby remanded for further proceedings consistent with this opinion and consistent with Act 439 of 1982.[4]
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
NOTES
[1] La.C.C.P. Article 641; Oby v. Flanagan, 356 So.2d 1047 (La.App. 1st Cir.1977).
[2] In oral arguments counsel informed us that the F&J Amoco property has since been sold to third parties for over $100,000.
[3] Where the issue under consideration is the classification of movable property as community or separate property of a married couple, we must look to the law of the parties' domicile at the time of acquisition. Succession of Dunham, 408 So.2d 888 (La. 1981). In the present case since both parties were domiciled in Louisiana at the time of the sale, Louisiana law is controlling. This item under consideration is the proceeds of a sale of immovable property which was acquired during the existence of the community. To determine whether the proceeds of the sale are community or separate property requires a determination of whether the Florida property before its sale and while it was still an immovable was considered community or separate. Since neither party offered a showing of what the Florida law is, this court will presume such law to be the same as Louisiana. See Johnson v. Nationwide Life Ins. Co., 388 So.2d 464 (La.App. 2nd Cir.1980). Under Louisiana law immovable property acquired during the existence of the community is presumed to be community property. McGee v. Harris, 333 So.2d 440 (La.App. 3rd Cir. 1976), writ denied 337 So.2d 529 (La. 1976).
[4] This new legislation provides a comprehensive procedural outline for the partition of community property in contested cases and for the settlement of the claims between the spouses arising from the matrimonial regime. The recent case of Simon v. Simon, 421 So.2d 931 (La.App. 4th Cir.1982), held that Act 439 of 1982 is to be applied retroactively to partition proceedings, save as to partitions already so far under way that it would cause unnecessary expense or delay. We find that the procedural status of this case is such that the provisions of the new legislation are readily adaptable to the further conduct and windup of these proceedings.