501 So.2d 897 (1987)
Helen Ann Orgeron BARRY
v.
Donald Ray BARRY.
No. 86 CA 478.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1987.
Jon A. Gegenheimer, Gretna, for plaintiff-appellant.
David E. Burja, Oklahoma City, for defendant-appellee.
*898 Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
This case is a partition of community following a divorce based on voluntarily living separate and apart. Both parties have appealed the court's ruling as to the distribution of certain items in the judgment of homologation.
Helen Ann Orgeron and Donald Ray Barry mere separated on November 10, 1979. The divorce judgment in favor of Mrs. Barry was signed on December 23, 1980. The date of termination of the community was stipulated to be November 24, 1980. On September 16, 1981 Mrs. Barry filed a petition of partition and requested an inventory. Judgment ordering partition and appointing a notary and two appraisers was rendered on July 8, 1982. The partition proceeding continued over a period of years during which the parties filed several motions in connection with discovery, culminating in a hearing of the merits on October 25, 1985. Testimony was taken in regard to the notary's proces verbal. The judge classified the items of property as separate or community property and ordered counsel for the parties to conclude the partition by November 29, 1985. Mrs. Barry moved in December for partition by licitation of the principal community assets, Mr. Barry's business (Bowhunters' Haven) and the family home in Jefferson Parish, which Mr. Barry opposed. On February 28, 1986 a rule for homologation was heard. By judgment, signed on April 11, 1986, the court ordered the parties to exchange movable items in conformity with the notary's recommendations. It awarded Bowhunters' Haven to Donald Barry and ordered that the family home be seized and sold. This appeal by both parties followed.
The issue raised by Helen Ann Barry is whether the judge erred in awarding one community asset, a business, to the husband while ordering seizure and sale of another community asset, the residence.
Donald Barry contests the crediting of mortgage payments on the residence and the order to sell it at auction. He further contests the judge's finding that the fruits and benefits of the "silver account" (Clayton Commodity Investment account) were separate property.
We consider first the wife's and husband's opposition to judicial sale of the house. The mandatory procedure for effecting a partition is provided by LSA-R.S. 9:2801. Although the community in this case was dissolved and the petition filed prior to its effective date, the statute is applicable, having been adjudged procedural and to be applied retrospectively. Simon v. Simon, 421 So.2d 931 (La.App. 4th Cir.1982), writ denied 423 So.2d 1181 (La. 1982); Hall v. Hall, 460 So.2d 1053 (La. App. 2nd Cir.1984), on rehearing.
The section of R.S. 9:2801 which sets out the allocation of assets and liabilities reads as follows:
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal *899 net distribution, the court shall order the payment of an equalizing sum of money, either case or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(d) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(e) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.
The statute, at (4)(c), clearly authorizes the court to use its discretion to allocate an asset to one party. Accordingly Mrs. Barry's complaint that it was error to allocate one asset while ordering the other sold has no merit. In Romero v. Romero, 457 So.2d 317 (La.App. 3rd Cir.1984), the court held that it was error to partition by licitation an unimproved lot of which the value was small in comparison to the total assets, when the lot could easily have been allocated and if necessary equalized by payment. In this case, Mr. Barry's business was valued by an accountant at only $10,000, while the total assets were in excess of $120,000. While we find that the judge was correct in allocating the business to Barry, his order to have the house seized and sold requires further consideration.
As recounted above, the parties dragged out the partition over a period of years with little progress toward an agreement, incurring the expense of an inventory, which the law does not require, and also of an accountant to value the business. The notary recommended allocation of the business to Barry and the house, valued at $90,000, to Mrs. Barry. After the hearing on valuation and allocation of property and liabilities, they were apparently still unable to agree on disposition of the business and house and Mrs. Barry filed for partition by licitation. When questioned at the hearing of the motion to homologate, the husband's attorney stated that Barry did not want the house. Mrs. Barry's attorney said that she did not want the house at its appraised price of $90,000 but would take it at $66,000, her estimate of its value in its present state of repair.
The statute recites that judicial sale is to be ordered only when an asset cannot be allocated, assigned by drawing of lots, or sold at private sale. Further, the court must state the reasons why the asset cannot be handled by the less drastic procedure. In Gilley v. Ketchens, 478 So.2d 638 (La.App. 2nd Cir.1985) the court found the litigants' failure to propose a method for the defendant to pay the equalizing sum was not sufficient reason for the trial judge to order the community home sold at public auction. The court held the judge was required by the statute to set out the manner of payment. If the party did not comply then he should order partition by private sale. Romero v. Romero, supra, the court upheld the trial judge's order for partition by licitation of the family home but only after the parties had not complied with his order to sell the property at private sale.
In our case, the Barrys may be unable and/or unwilling to comply with an order for private sale, but in the absence of stated reasons by the judge for passing over this option, we find that it was error to order the house disposed of at public *900 sale. Accordingly, we reverse that portion of the judgment.
We find no error in the judge's determination that the silver account and its profits were the separate property of Mrs. Barry. Her testimony that the checks deposited into the account were gifts to her alone from her father and that he advised her on selling was credible. LSA-C.C. art. 2339 provides that the natural and civil fruits of separate property of a spouse are community property, unless reserved as separate by a recorded declaration. However, article 2368 provides:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
The comment explains, as follows:
Under this provision, when separate property has increased in value due to the uncompensated common labor and industry of either spouse, the other spouse is entitled to one-half of the increase. To the extent that a spouse is compensated for his labor, no reimbursement is due.
Prior Civil Code Article 2408 provided a right of reimbursement when separate property increased in value due to the common labor, interpreted as the labor of either spouse. Reimbursement could not be obtained if the increase was due to the ordinary course of things only. See Beals v. Fontenot, 111 F.2d 956 (5th Cir.1940); Abraham v. Abraham, [230 La. 78] 87 So. [2d] 735 (La.1956).
Civil fruits are defined in article 551, which states, in pertinent part:
Civil fruits are revenues derived from a thing by operation of law or by reason of a judicial act, such as rentals, interest, and certain corporate distributions.
The silver account drew no interest. The only benefit was realized at the sale of the shares. The 1978 income tax return of Donald and Helen Ann Barry indicates a sale on December 5, 1978 with a capital gain of $1,808. Helen Ann Barry's return for 1979 shows a sale in October and a gain of $12,603. In Succession of Barr, 219 So.2d 817 (La.App. 2nd Cir. 1969), writ refused 222 So.2d 64 (La.1969), the court distinguished fruits, such as rentals or interest, from profits and held that the profits from the sale of a wife's separate property constituted her separate property and did not fall into the community. Such is the situation here.
The issue raised by the defendant regarding credits for mortgage payments made by Mrs. Barry arises from the following calculation by the notary (record, p. 122):

 F. Computation of Credit:
 (See Gachez vs. Gachez, 451 So.2d 608
 Fifth Circuit CourtWrit denied (1984).
 1. Total separate funds expended by Mrs.
 Barry × 75% ($24,976.21 × 75%).
 MRS. BARRY / MR. BARRY
-$24,976.21 × 75% $18,732.16 $6,244.05
-$1,938.92 × 75% $ 484.73 $1,454.19
 ____________________________
 $19,216.89 $7,698.24
 ___________ _________
-$19,216.89  $7,698.24 $11,527.65[1]
 -----------

In Gachez v. Gachez, 451 So.2d 608 (La. App. 5th Cir.1984), writ denied 456 So.2d 166 (La.1984), the court held that the spouses should be reimbursed one-half of the amount of their respective separate funds expended upon the community property, whether for a community obligation or for its benefit, in accordance with LSA-C.C. art. 2365 and 2367. In examining the above calculation, we see that while a fraction of 75% rather than 50% was applied to funds expended the spouse who had not paid was given a credit of 25%, thereby cancelling out the extra 25%. This seems a more cumbersome method of arriving at the same end than calculating half the amount spent from separate funds, but is not an error.
For the reasons stated above, we reverse the judgment insofar as it orders that the *901 family home at 613 Miradon Avenue, Metairie be seized and sold by the sheriff and remand for further proceedings consistent with this opinion. In all other respects the judgment appealed from is affirmed.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
NOTES
[1] This total is incorrect and should be $11,518.65.