451 So.2d 608 (1984)
Sally Sheets GACHEZ
v.
Robert J. GACHEZ.
No. 83-CA-782.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1984.
Writ Denied September 14, 1984.
*609 Hall, Lentini, Mouledoux & Wimberly, Stephen T. Wimberly, Metairie, for plaintiff-appellee.
Occhipinti & Mura, William E. Mura, Jr., Gerardo D. Abascal, New Orleans, for defendant-appellant.
Before CHEHARDY, BOWES and GRISBAUM, JJ.
CHEHARDY, Judge.
We are concerned here with a partition of community property.
Pertinent chronology is as follows:
Sally Sheets and Robert Gachez were married on October 12, 1975. One child, Aaron Scott Gachez, was born on September 3, 1978. On July 15, 1981, Mrs. Gachez filed a petition for divorce alleging the parties had been living separate and apart without reconciliation since July 5, 1980. Judgment was rendered by default in favor of plaintiff on August 5, 1981, and custody of the minor was awarded to the husband, as prayed. On June 16, 1982, a consent judgment was rendered ordering Mrs. Gachez to pay child support in the sum of $135 per month, and on November 12, 1982, plaintiff, now Mrs. Robert Milam, filed this petition for partition.
Following trial, judgment was rendered awarding the former wife $8,560.27 as her share of the community and awarding defendant $4,528.27 as his share, along with the possession, use and enjoyment of the community 1979 Oldsmobile. The judgment also provided that the parties were to share any interest accumulated from the sale of the family residence on deposit in a local bank.
Defendant has appealed.
*610 Prior to judgment, to assist the court in effecting the partition, the parties entered into the following stipulations:
"1) Proceeds from the sale of the family home, $13,088.54, are on deposit in Hibernia National Bank, Savings Account No. XX-X-XXXXX.
"2) Sally Sheets Milam received an inheritance from her father, of which the sum of $9,100.00 was used in the purchase of the community home on January 4, 1980.
"3) Two automobiles were purchased during the marriage, namely a 1979 Oldsmobile, currently in the possession of Robert Gachez, and a 1973 Volkswagen, which was sold after the parties physically separated, for the sum of $900.00. The said Robert Gachez retained the proceeds from the sale of the said Volkswagen. Regarding the 1979 Oldsmobile, Sally Milam retained and used the said vehicle for a period of twelve (12) months, between the date of the physical separation and the date of divorce, and during that time, paid notes in the amount of $195.00 per month. After that time, the car was returned to Robert Gachez, who has made the payments since that time. As of January 6, 1983, the car's net value was $2,132.00.
"4) Robert Gachez did pay the mortgage payments due on the family home, in the amount of $500.00 per month, from the date of physical separation until the house was sold on June 10, 1982.
"5) Sally Milam withdrew the sum of $800.00 from the family savings account with Pelican Homestead after physical separation.
"6) Robert Gachez paid outstanding balances on two family credit accounts, namely J.C. Penney and Master Charge, said accounts totaling $900.00, after physical separation but before legal separation.
"7) The cost of supporting, maintaining and educating the child of the marriage was $270.00 per month from the date of physical separation until June 16, 1982, at which time a judgment ordering Sally Milam to pay the sum of $135.00 per month child support was rendered.
"8) During the period of time between physical separation on July 5, 1980, and the date of judgment of divorce, August 5, 1981, Sally Milam's income was $700.00 per month, and Robert Gachez's income was $1,200.00 per month."
From its reasons for judgment it is clear the trial court arrived at its award in the following manner:
The community assets, as stipulated by counsel, consists of the proceeds due the parties from the sale of the community home in the sum of $13,088.54 (plus interest), a 1979 Oldsmobile, valued at $2,132.00, proceeds of $900.00 retained by the husband from the sale of a 1973 Volkswagen, and $800.00 of community funds withdrawn by the wife from Pelican Homestead.
The net value of the community assets amounts to $16,920.54.
In determining the amounts it was stipulated the wife used $9,100.00 of her separate property to help purchase the family residence. Relying on LSA-C.C. art. 2367, the court allowed the wife one-half of that amount, or $4,550.00, as reimbursement from the community.
The court awarded the husband $2,750.00 under the authority of LSA-C.C. art. 2365, representing one-half of the 11 mortgage payments of $500.00 per month which he made on the family residence after July 15, 1981 (the date of the filing of the petition for divorce) until the date the house was sold on June 10, 1982.[1]
In determining the distribution of the remainder of the community assets valued at $9,620.54 ($16,920.54 less $4,550.00 to the wife and $2,750.00 to the husband), the court, pursuant to LSA-R.S. 9:2801, awarded *611 one-half, or $4,810.27, to each spouse subject to the following:
a. Since the wife had previously withdrawn $800.00 from the Pelican Homestead account, that amount was deducted from her share, leaving a net award of $4,010.27, and
b. Since the husband had been awarded the 1979 Oldsmobile valued at $2,132.00 and previously retained possession of the proceeds of $900.00 from the sale of the Volkswagen, his net award amounts to $1,778.27.
In summary Sally Gachez was awarded $8,560.27 (reimbursement of $4,550.00 plus $4,010.27) and Robert Gachez was awarded $4,528.27 (reimbursement of $2,750.00 plus $1,778.27).
In this court appellant contends the trial court erred in: (1) failing to find the parties had voluntarily or nonjudicially partitioned the community at the time of the physical separation; (2) in not fully reimbursing defendant for all mortgage payments made by him after the termination of the community; (3) in not awarding him full reimbursement for all funds expended for the support of the minor in the absence of a prior judgment of child support; (4) in failing to reimburse defendant for community funds used by plaintiff to satisfy her separate obligations; and (5) in not recognizing the parties as co-owners of the Oldsmobile at the termination of the community until the time of trial.
In support of his first contention that when the parties physically separated (July 5, 1980) they amicably settled the community, he indicates his wife retained the family Oldsmobile and made the monthly payments thereon and withdrew $800.00 from the family savings account. She opened a separate checking account, paid some of the community bills and separately retained her own wages.
At the same time appellant retained and sold the family Volkswagen for $900.00, which he retained. He opened a separate checking account and retained his own earnings. Out of these earnings he paid some of the outstanding balances on the family's credit card accounts, made the payments on the home mortgage, and he alone paid for the support and maintenance of the minor child.
The wife made no claim for the family furnishings other than requesting the washer and dryer, a claim which she has apparently abandoned, hence the husband claims they apparently distributed the household furnishings and effects.
Appellant contends that although no values were assigned to the properties retained it is apparent the parties were attempting to accomplish a voluntary partition of the community.
He also indicates the parties attempted to partition their future incomes, which they could not do, and cites this as strong evidence of their interest to partition the entire community. This, he asserts, should not nullify or affect other items which the parties could properly partition.
The husband did not testify and his claims are made by way of his brief.
The only evidence in the record is the stipulations of the parties, quoted in extenso above and the testimony of the former wife. She testified that at no time did the parties enter into an agreement concerning a partition either in whole or in part, they merely agreed to the use of certain items pending dissolution of the community and settlement of the same.
We note that on June 10, 1982 when the home was sold, the parties were unable to agree on a nonjudicial partition, and therefore the funds were placed on deposit in a bank pending judicial partition.
On July 4, 1980, the date the parties physically separated, LSA-C.C. art. 2336 provided as follows:
"Each spouse owns a present undivided one-half interest in the community property. Nevertheless, neither the community nor things of the community may be judicially partitioned prior to the termination of the regime."
This article was amended by the legislature by Act 921, Sec. 1, 1981, effective *612 September 11, 1981, which added the following paragraph:
"During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse acquires are separate property. The partition is effective toward third persons when filed for registry in the manner provided by Article 2332."
Prior to the effective date of this act there was no provision in our law for a voluntary partition of community property before the termination of the community. Therefore on the date the parties physically separated there was no provision in law for a voluntary partition. We note also that the amendment in 1981 became effective after the community had ended by the petition for divorce.
Our jurisprudence has consistently interpreted LSA-C.C. art. 8 regarding retrospective application of law to mean that substantive laws, as opposed to procedural laws, should be applied retroactively only if the language used by the legislature shows such clear intent. Green v. Liberty Mut. Ins. Co., 352 So.2d 366 (La.App. 4th Cir. 1977).
Even if the parties would have been entitled to partition the property at that time, no evidence was presented during the trial to indicate they intended to do so. The wife specifically denied it, and the husband failed to testify.
Relative to appellant's second contention, it is his position that the lower court erred in not recognizing the parties as co-owners of the family home subsequent to the termination of the community and as such entitled to full reimbursement for all mortgage payments made by him after the termination of the community.
The trial court awarded plaintiff $2,750.00, or one-half of the amount sought of $5,500.00, the total for 11 monthly payments of $500.00 each made after the dissolution of the community on July 15, 1981 until July 10, 1982, the date the house was sold.
We are cited to the cases of Lentz v. Lentz, 411 So.2d 59 (La.App. 4th Cir.1981); Kennedy v. Kennedy, 391 So.2d 1193 (La. App. 4th Cir.1980); and Butler v. Butler, 228 So.2d 339 (La.App. 1st Cir.1969), in support of his position that he is entitled to full reimbursement.
The trial court award was based upon the provisions of LSA-C.C. art. 2365, which provides:
"If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
"Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets."
The facts operative in the cases cited by appellant for the proposition that he is entitled to full reimbursement for all mortgage payments made after the dissolution of the community arose prior to the enactment of C.C. art. 2365 and codification of the law relating to one-half reimbursement.
We note here that the wife used $9,100.00 of her separate (inheritance) funds to purchase the family residence and she was reimbursed for one-half of that amount under the authority of LSA-C.C. art. 2367.
Both articles provide for reimbursement in the amount of one-half of the amount of the separate property expended, regardless of whether the amount is expended for payment of a community obligation or for the benefit of the community property.
*613 The trial judge applied both of these articles strictly and ordered reimbursement for Mrs. Milam in the sum of $4,550.00 (one-half of her $9,100.00 inheritance expended for the house), and reimbursement for Mr. Gachez in the sum of $2,750.00 (representing one-half of the mortgage payments of $5,500.00 made by him). We are of the opinion that his judgment was proper under the cited articles.
Appellant cites as error the trial court's failure to reimburse him in full for the stipulated $270.00 per month which he paid for the support of his minor son from the date of the parties' physical separation, July 5, 1980, until June 16, 1982, the date of the consent judgment.
It is his position that the support, maintenance, and education of the child is a mutual obligation imposed on both parents and has a legal independent basis without the necessity of a court order. He equates this situation with payment of the mortgage notes which required no judgment before reimbursement.
The courts have held that mutual obligation of support of children imposed by law on both parents must be determined by the needs of the children and the circumstances of those who are obligated to pay. Marcus v. Burnett, 282 So.2d 122 (La.1973); Graval v. Graval, 355 So.2d 1057 (La.App. 4th Cir.1978).
If Mr. Gachez was dissatisfied with the arrangement of paying in full for the support of his son, he was entitled to seek a judicial determination at any time.
We know of no case, and have been cited to none, which would permit recovery for child support prior to a judicial determination thereof, either by consent or a full hearing thereon, and we find no error in the trial court's refusal to make such a retroactive award here.
Appellant's fourth assignment of error concerns the claim of the husband that the wife used community property (her salary of $700.00 per month) to satisfy her separate obligation (rent for her apartment). He asks for reimbursement of one-half of her salary for one year, claiming that income earned prior to the termination of the community is community property and should properly be considered in determining the net value of the community.
The evidence is clear that the wife's income was spent for a community obligation, namely, her own support. By the same token the husband's income was spent for community obligationshis own support, the child's support and preservation of the community by payment of the mortgage notes.
Appellant claims the wife did not use all of her funds for community purposes because she rented an apartment and returned no money to her husband, paid no house notes, nor did she contribute to the support of the child.
Our courts have always recognized that both spouses have to incur expenses to live and that the respective incomes are usually offset by corresponding expenses. There being no evidence that Mrs. Milam disposed of her small income by fraud, it was properly excluded from consideration by the trial court.
Appellant's final contention is that the court erred in failing to reimburse him for all of the car notes paid by him from the termination of the community until the time of trial, a period of 17 months. He equates the payments for the car note with payments of the home mortgage note.
The trial court failed to recognize appellant's claim for reimbursement on the car note. It apparently concluded the exclusive use and enjoyment of the vehicle by plaintiff offset the amount paid.
Although our jurisprudence has consistently held that rent or credit is not owed when one spouse occupies the family home while making mortgage payments, the situation at hand involving moveable property is distinguishable.
Automobiles tend to depreciate in value over a period of time and the use of the vehicle is directly related to its depreciation.
*614 Equity would dictate that appellant should not have the full use, benefit and enjoyment of the moveable at the expense of the wife, who by the same token enjoyed the use of the vehicle and paid the notes the previous year, prior to returning the automobile to him.
In reviewing the entire judgment, after determining the net value of the community based upon stipulations of counsel, the court ordered reimbursement of $4,550.00 to the wife and granted $2,750.00 to the husband. The remainder was divided and awarded to each spouse subject to credits for items already in their respective possession. We find no error in the said allocation and distribution.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] In its reasons it is incorrectly indicated the award was based upon one-half of the payments from filing for divorce (July 15, 1981) until the date of the divorce (August 5, 1981), which of course would not amount to 11 payments. We conclude the 11 payments referred to were made after July 15, 1981 until the house was sold in 1982.