492 So.2d 71 (1986)
David P. DILLENKOFFER
v.
Linda M. DILLENKOFFER.
No. 86-CA-103.
Court of Appeal of Louisiana, Fifth Circuit.
June 20, 1986.
Writ Denied October 3, 1986.
Richard M. Michalczyk, Cronvich, Wambsgans & Michalczyk, Metairie, for plaintiff-appellee.
J. William Starr, Harold L. Molaison & Associates, Gretna, for defendant-appellant.
Before KLIEBERT and GAUDIN, JJ., and NACCARI, J. Pro Tem.
KLIEBERT, Judge.
The husband, David P. Dillenkoffer, plaintiff, filed a petition for separation from bed and board against his wife, Linda M. Dillenkoffer, on January 30, 1984. A judgment of separation, based on mutual fault, was rendered on May 14, 1984, following which, the wife filed a petition for a division of the community. Each party filed a descriptive list of the assets of the community and each filed a rule to traverse the other's inclusion or exclusion of assets and/or the values assigned to various assets. Each asserted claims for reimbursements due to them by the marital regime and/or the other spouse. A combined hearing of the rules to traverse and the merits was held on April 22, 1985.
*72 Following the hearing the trial judge rendered judgment containing decrees which allocated community property[1] to the parties at the values indicated below:

 TO THE HUSBAND TO THE WIFE
 Tools $150.00 Izusu Pickup Truck $7,500.00
 Skill Saw 75.00
 Reciputating Saw 200.00 Wedding Presents 150.00
 Ice Maker 150.00
 Aluminum Shed 150.00 Living Room Set 700.00
 Yard Equipment 150.00 _______
 _______
 Total $875.00 $8,350.00

and ordered the wife to pay community debts of $4,529.00, consisting of a $300.00 loan from the wife's mother, $400.00 due on furniture acquired from the wife's sister, and a $3,829.00 balance due on the mortgage note secured by a mortgage on the pick-up truck. Additionally, the trial judge ordered the husband to pay the wife $3,349.78 in cash which he stated "represents the difference in value of their respective shares of the community, including the claims for reimbursement."
The husband appealed and argues the trial judge erred in: (1) failing to compensate him for the payment of community debts paid by him with his separate funds after the wife left the matrimonial domicile, (2) reimbursing the wife for labor utilized in the construction of an addition to the matrimonial residence which was the husband's separate property, and (3) reimbursing the wife $3,877.28, claimed as mortgage payments made by the wife on the husband's separate property used as the matrimonial residence, without adequate proof of such payments. The wife also appealed and argues as error the trial judge's failure to acknowledge her claim for $2,000.00 representing payments made with her separate property for monthly mortgage notes on the truck. We affirm in part, reverse in part and remand for further proceedings.
According to the provisions of Civil Code Article 155, ".... the judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the original petition was filed in the action in which the judgment is rendered...." with restrictions on the retroactive effect where attorney fees and costs of the marital litigation are involved and where rights acquired in the interim between commencement of the action and recordation of the judgment are involved. Likewise, in the event the marital regime is in effect on the day on which the petition for divorce is filed, under the provisions of Civil Code Article 159, the judgment of divorce has the same effect as to the marital regime as the rendition of a separation judgment. In the instant case, the judgment of separation was rendered before the petition for divorce was filed; hence, the marital regime was terminated as of January 30, 1984, the date on which the petition for separation was filed.
Where the spouses are unable to agree on a partition of the community property and/or a settlement of the claims between the spouses, LSA-R.S. 9:2801 sets out the rules under which the settlement and partition are to be conducted. The statute directs the trial judge to value the assets as of the time of trial, determine the liabilities, adjudicate the claims of each party and then allocate or assign to the respective spouses all of the community assets and liabilities so that ".... each spouse receives property of an equal net value...." *73 or if the allocation of assets and liabilities results in an unequal net distribution, ordering one spouse to pay the other a cash amount to equalize the distribution. As is generally true, however, the descriptive list and rules to traverse were not filed in the same format contemplated by LSA-R.S. 2801, nor did the trial judge first determine all of the assets belonging to the community as of the date of its termination, the value of each as of the date of the trial of the merits, the liabilities of the community as of the date of its termination, and the validity or invalidity of each claim made by the parties. Instead, he made an assignment of some community assets at stated values, assigned some liabilities in specified amounts, coupled this with an order for the husband to pay to the wife the sum of $3,349.78, and sought to explain in his reasons for judgment the way in which he adjudicated the disputes in order to arrive at the cash amount the husband was ordered to pay to the wife.
In substance, in reasons for judgment, he resolved the various disputes in the manner hereinafter indicated:

 Total Amount Owed by
Description Involved Husband to Wife
Addition to Separate Property of Husband $ 4,482.00 $2,241.00
Insurance proceeds Received by Husband for Mattress
and Spring, Separate Property of Wife 200.00 200.00
House Notes Paid on the Marital Residence, Separate
Property of Husband 7,754.56 3,877.28
Proceeds from Community Boat & Trailer Sold by
Husband 225.00 112.50
Community Cash on Hand Used by Husband 300.00 150.00
Community Business Funds Utilized by Husband 200.00 $ 100.00
 __________ _________
 $13,161.56 $6,680.78
 Total Owed by Wife
Description Involved to Husband
Community Cash Withdrawn by Wife from NBC $ 150.00 $ 75.00
Community Bills Paid by Husband with Separate
 Funds:
 J. C. Penney 220.00 110.00
 Acosta Jewelers 400.00 200.00

He denied the husband's claim of $912.80 for payment of notes on the truck and the wife's asserted value of $5,000.00 for the business. He then stated Mrs. Dillenkoffer owed Mr. Dillenkoffer $2,946.00 representing the difference in the partition of the community assets. Further, he said Mr. Dillenkoffer owed Mrs. Dillenkoffer $6,295.78 (apparently based on her claims) and netting out the two results in a balance of $3,349.78 owed by Mr. Dillenkoffer to Mrs. Dillenkoffer.
The failure to adhere to the format contemplated by the statutes makes it difficult if not impossible to compare the trial court judgment to the record, particularly where, as here, the computation to arrive at the cash sum owed by one spouse to the other is not shown. Here we are unable to reconcile the figures reflected in the record, the judgment and the reasons for judgment to the $3,349.78 said to be owed by the husband to the wife. Consequently, after considering the assignments of error, we will remand the case for the trial judge to recompute the cash amount to be paid by one spouse to the other, in conformity with the views herein expressed.
*74 We consider first the husband's assignment of error relative to the wife's claims arising from the addition constructed on the marital residence and the payment of mortgage notes due on the residence.
In his reasons for judgment the trial judge valued the addition to the marital residence at $4,482.00 and under the authority of Louisiana Civil Code Article 2368[2] awarded one-half of this value to the wife. The husband contends this was error because it included an allocation for the husband's labor and donated labor which could only be allotted under the provisions of Civil Code Article 2366[3] after valuing same in accordance with the guidelines of McKey v. McKey, 449 So.2d 564 (1st Cir. 1984). We do not agree.
In our view Civil Code Article 2366 is the applicable article under which to adjudicate the claim of a spouse where community assets, including money, spouse's labor or donated labor, are used in the construction of a building or in the planting of a crop on the separate property of the spouse. Therefore, the value used in making the allocation between spouses is "the value that the community assets had at the time they were used." On the other hand, Article 2368 was intended to apply when the uncompensated labor of the spouse resulted in enhancement in value, such as could occur where spouses without compensation work in the separate business of one of the spouses and the labor itself causes an enhancement in value of the business. In the latter instance, the value used is the enhanced value of the separate property.
Here the trial judge's assignment of a $4,482.00 value to the addition was based on the valuation by an insurance adjuster who had computed the amount of a fire loss on the house, including the addition, and paid same to the husband for the loss of his separate property. Hence, in essence the trial judge allocated the insurance proceeds received by the husband for the loss of the addition equally between the husband and wife. Since the addition had been destroyed by fire, the husband has received the insurance proceeds for its loss, and the construction and loss was in a relatively short time period, we cannot say the trial court's assignment of value or method of computation violated the provisions of either Civil Code Article 2366 or Civil Code Article 2368. In our view the method of valuation used by the court complies with the valuation requirements of Civil Code Article 2366, i.e., "the value [the] community assets had at the time they were used," or that of Civil Code Article 2368, i.e., "... the increase [in value of the separate property] attributed to the common labor" due to the nature of the addition and the closeness of time of its construction and subsequent destruction by fire.
Next we consider the mortgage payments on the husband's separate property.
In his reasons for judgment the trial judge awarded $3,877.28[4] for one-half of the house notes paid by the community on the marital residence which was the separate property of the husband. Although the wife made a claim on the descriptive list of $3,527.28 for such payments, there is *75 no evidence in the record before us from which we can determine the mortgage payments and/or by whom paid.
Whenever mortgage payments are paid in connection with the marital home which constitutes the separate property of one spouse, the community is entitled to reimbursement for principal only. Civil Code Article 2366, Willis v. Willis, 454 So.2d 429 (3rd Cir.1984). Payments for interest, taxes, and insurance are generally not considered as reimbursable expenses to the community because the community has had the benefit of using the house as the marital residence. Since we are unable to determine from the record what portion of the payments constituted interest, taxes and insurance, we will leave it up to the trial court to make this adjustment on the remand.
We now consider the husband's contention the trial judge erred in failing to order reimbursement for all community debts paid by the husband after their physical separation. The husband's descriptive list included the following alleged debts and liabilities of the community:

 J.C. Penney Card (purchased
 household items) $ 220.00
 Avenue C clinic doctor bill 300.00
 Acosta Jewelers (purchased gold
 chains) 700.00
 Utility bills paid to LP & L 840.00
 Louisiana Gas Service, Inc. 360.00
 South Central Bell Company 192.00
 Jefferson Parish Public Utilities 72.00
 Car and truck insurance 1,068.00
 Life insurance on wife by Life of
 Georgia 360.00
 _________
 $4,112.00

In her motion to traverse the wife averred:
The $220.00 on the J.C. Penney card was for a microwave which was a gift and is not owed.
The Avenue C Clinic Doctor bill is not owed.
Acosta Jewelers should be listed at $349.00 and not $700.00.
The following bills are not owed:
1) Louisiana Power & Light
2) Louisiana Gas Service
3) South Central Bell Company
4) Jefferson Parish Public Utilities
As the car and truck insurance was not paid it was cancelled and is not owed.
There is no life insurance on Linda by Life of Georgia.
The husband testified he paid the outstanding balance on the Acosta account ($379.00) and the Clinic account ($300.00), and was in the process of paying off the Penney's account. However, he offered no documentation as to when the debts were incurred, for what purpose, or when they were paid. Likewise, the husband offered no documentation as to when the utility bills were incurred and/or paid, nor did he document the existence of and/or premiums paid on the alleged insurance policies. Defendant did not cross-examine plaintiff on the debts or offer rebuttal testimony, but instead referred in post-trial memorandum and again on appeal to the refutations set forth in her motion to traverse.
In his reasons for judgment, the trial judge ordered reimbursement to plaintiff in the amount of $310.00, which represented one-half of the payments on the Penney and Acosta accounts.[5] The judge explicitly ruled plaintiff failed to bear his burden of proof as regards the alleged payment of other community debts. Perhaps the judge was influenced by the husband's failure to support his claims for reimbursement with available documentation. See Romero v. Romero, 457 So.2d 317 (3rd Cir.1984). Although counsel alleges the receipts and cancelled checks were destroyed by the fire at the marital residence, copies were certainly available from the respective banks and corporations.
Under the facts before us we cannot say the trial court erred in concluding plaintiff failed to prove he had paid certain community *76 debts with his separate funds. See Romero, supra and Scott v. City of Alexandria, 446 So.2d 986 (3rd Cir.1984). Therefore, the husband's claims for reimbursement of the aforementioned debts are denied.
The wife's sole assignment of error concerns the valuation of a truck purchased during the existence of the community. The wife listed the truck as community property valued at $7,659.12, while the husband listed its value as $4,500.00. The wife testified the outstanding note on the truck was $3,829.56, and that she was in possession of the truck and had made eleven payments totalling almost $2,000.00 since the parties were separated. The husband admitted the community made only seven or eight payments on the truck before the wife assumed the note.[6] In post-trial memoranda the parties agreed the wife should retain possession of the truck.
The trial judge valued the truck at $7,500.00 and allotted it to the wife, subject to payment of the outstanding note. No credit was given for the payments which the wife made on the truck after the termination of the community. We note the wife did not assert a claim for the credit in post-trial memorandum.
Here the wife avers the trial judge erred in not crediting $2,000.00 in payments made with her separate funds when allotting equity in the truck and requests that we correct the error by awarding her a credit in that amount. However, in addressing an identical claim in Gachez v. Gachez, 451 So.2d 608, 613 (5th Cir.1984) this court noted:
"Appellant's final contention is that the court erred in failing to reimburse him for all of the car notes paid by him from the termination of the community until the time of trial, a period of 17 months. He equates the payments for the car note with payments of the home mortgage note.
The trial court failed to recognize appellant's claim for reimbursement on the car note. It apparently concluded the exclusive use and enjoyment of the vehicle by the plaintiff off-set the amount paid.
Although our jurisprudence has consistently held that rent or credit is not owed when one spouse occupies the family home while making mortgage payments, the situation at hand involving moveable property is distinguishable.
Automobiles tend to depreciate in value over a period of time and the use of the vehicle is directly related to its depreciation.
Equity would dictate that appellant should not have the full use, benefit and enjoyment of the moveable at the expense of the wife ..."
We find Gachez dispositive of the issue and therefore affirm that portion of the judgment valuing the truck at $7,500.00 and awarding it to defendant, subject to the outstanding note of $3,829.00. The wife was not entitled to reimbursement or credit for notes paid from the termination of the community until trial, as she enjoyed the exclusive use of the truck.
Considering the above, we remand the case to the trial court to recompute the amount owed by the husband to the wife under the views herein expressed. All costs of the appeal are to be borne by the husband.
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
NOTES
[1] The judgment also decreed that the washer, dryer and television set claimed as community property in the wife's descriptive list was the separate property of the husband. Neither party raised an issue as to this decree on the appeal; hence, we consider the ruling acceptable to both parties.
[2] Civil Code Article 2368 provides:

"If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor."
[3] Civil Code Article 2366 provides:

"If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.
Buildings, other constructions permanently attached to the ground and plantings made on the separate property of a spouse with community assets belong to the owner of the ground. Upon termination of the community, the other spouse is entitled to one-half of the amount or value that the community assets had at the time they were used.
[4] We are unable to determine how the amount was computed and the amount of interest, taxes and insurance included therein.
[5] The judge rounded off the amount due on the Acosta account to $400.00, added in the $220.00 due Penney's, and ordered reimbursement of one-half of the total.
[6] The husband's claim for reimbursement of $912.80, which represented one-half of the community payments on the truck, was denied by the trial judge, who noted a lack of codal authority allowing reimbursement for payment of community debts with community funds. The husband does not raise the issue on appeal.