603 So.2d 235 (1992)
Lionel GUILLAUME, M.D.
v.
Fenelle Garcon GUILLAUME.
No. 91-CA-2144.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
Rehearing Denied September 17, 1992.
*236 D. Douglas Howard, Jr., Rachel M. Guidry, New Orleans, for appellee.
Caryl H. Vesy, Phillips & Vesy, New Orleans, for appellant.
LOBRANO, WARD and ARMSTRONG, JJ.
LOBRANO, Judge.
The community of acquets and gains formerly existing between Dr. Lionel Guillaume and Fenelle Garcon Guillaume terminated on February 25, 1988. Pursuant to partition proceedings instituted by the husband, the trial court rendered judgment on April 23, 1991 allocating the community of assets and liabilities between the parties and ordering a cash equalization payment to the wife.
From that judgment, the husband appeals asserting seven assignments of error. We address each separately.
ERROR NO. 1:
The husband complains that the trial court erred in not qualifying Mrs. Carol Riggio as an expert in real estate appraisals. As a result, he argues her "opinion" testimony was ignored and the valuations of the rental real estate (allocated to him) were too high.
Mrs. Riggio testified she was a licensed real estate agent. The court allowed her to testify as to how she arrived at the $59,900.00 figure for each rental property, but would not qualify her testimony as that of an expert appraiser. We find no abuse of the court's discretion in this regard. Mrs. Riggio was in the business of selling and buying properties for clients, not rendering appraisals. The court did weigh her testimony and concluded that the properties were worth $69,000.00 each. Considering the fact that the properties were used for rental purposes, and Mrs. Riggio testified that other properties in the area sold for $64,500.00 to $68,000.00,[1] we find no error in the trial court's valuations.
ERROR NO. 2:
The husband argues that a bank account in First Financial Bank in the amount of $17,584.00, allocated to him, was improperly classified as a community asset because it was in fact a corporate asset of his medical corporation. In support, he refers to testimony of John Theriot, his CPA, who stated that in his opinion, because *237 the account was under the Federal Identification number of the corporation, it was a corporate asset.
In rebuttal, the wife points out that the account is not in the name of the corporation, but in the husband's personal name. The bank statement clearly evidences this fact.
We have determined that the trial court was correct. For reasons assigned under Error 6 we conclude that the account was not included as a corporate asset and is properly allocated as an asset of the community.
ERROR NO. 3:
In this assignment the husband complains that the trial court awarded him a reimbursement of only one-third of the $23,000.00 withdrawn from the community by the wife. In his reasons for judgment, the trial judge explained:
"The court feels that the majority of the claims for reimbursement for household repairs that Mrs. Guillaume made fall under the category of ordinary maintenance for the house. The portion of Mr. Guillaume's share of the $23,000.00 for which he has not been reimbursed adequately compensate Fenelle Guillaume for any extraordinary repairs or improvements that she made on the community home."
After review of the testimony, we find the trial court's resolution of this issue to be fair and equitable. We find no merit in this assignment.
ERROR NO. 4:
The husband was awarded the 1985 Mercedes Benz owned by the community. The evidence supports the conclusion that it was used exclusively by him. However, he argues that he should be reimbursed for the payments he made to preserve a community asset.
In Davezac v. Davezac, 483 So.2d 1197 (La.App. 4th Cir.1986) we held that where a party has the exclusive use of a community vehicle equity dictates that he be charged for the full amount of maintaining that vehicle.
The husband argues, however, that Davezac should be inapplicable because here the vehicle involved is a Mercedes which does not depreciate as rapidly as other cars. Although we are not aware of the depreciation rate of a Mercedes, we find the distinction to be one without a difference. The husband has the exclusive use and enjoyment of a presumably high quality vehicle. Arguably it may last longer than other vehicles, however in our opinion his exclusive use of that asset is worth the maintenance costs he incurred.
ERROR NO. 5:
The trial court ordered the husband to pay a medical bill to Tulane Medical Center in the amount of $2,766.00. The court concluded that this was the amount owed by the husband as of January 22, 1991.
The husband complains that this medical expense was incurred after the community's termination and thus was incorrectly found to be a community liability.
There is no testimony by either party directed to this issue, only legal argument before the trial judge. Apparently, the husband was ordered to pay this medical expense, as well as others, in a previous judgment. The husband's attorney implicitly acknowledged this during argument. We are satisfied that the trial court properly concluded that the expense was still outstanding and that the husband was responsible.
ERROR NO. 6:
The husband complains that the trial court erred in valuing his corporate medical practice at $115,0000.00. In support he asserts numerous grounds. He complains that the $17,584.00 account complained of in Error 2 cannot be included as a corporate asset if it is classified a community asset. Further, he takes issue with the valuation testimony of the wife's accountant, Ms. Nix, and the court's failure to accept his accountant's valuation.
John Theriot, the husband's CPA and Ms. Nix, the wife's CPA both valued the medical corporation. The substance of their testimony was predicated on balance sheets previously prepared by Rodney Johnson, the corporation's former accountant. Theriot *238 valued the corporation at $43,000.00 which included the disputed First Financial account. Ms. Nix placed a value of $115,000.00 on the business.
Initially we note that the testimony is vague with respect to the First Financial account. However, after review of Johnson's February 27, 1988 balance sheet, we are satisfied the account was not included in the corporate assets.[2] In addition, we cannot say the trial court erred in accepting Ms. Nix's valuation over that of Theriot. Ms. Nix supported her conclusions with documentation and plausible explanations. Theriot's omission of the investment assets, as well as other items, were predicated on speculation and assumption. We find no merit in this assignment.
ERROR NO. 7:
The trial court deferred ruling on the potential IRS liabilities of the medical corporation and/or the community. As of the hearing date there was no definitive ruling by the IRS. The trial judge expressed concern about allocating a contingent liability to the community until a final IRS determination. The husband complains this was error and cites the provisions of La. R.S. 9:2801 in support.
We agree that a piecemeal partition of the community is not appropriate. However, where a contingent community liability is involved, we have recognized the impossibility of determining its value. See, Mexic v. Mexic, 577 So.2d 1046 (La.App. 4th Cir.1991). It would be unfair to the parties to hold off partitioning a community awaiting the outcome of contingent liabilities. When they (the liabilities) do occur, the parties may seek the appropriate relief.
For the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The sales took place in the 1990's. Her testimony was on January 31, 1991.
[2] The total cash shown on the balance sheet is considerably less than cash in the the First National account.