693 So.2d 199 (1997)
Doris Mae BERGERON, born Nix, PlaintiffAppellee,
v.
John Gespor BERGERON, DefendantAppellant.
No. 96-1586.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1997.
*200 Stephen Ronald Streete, Lake Charles, for Doris Mae Bergeron born Nix.
Alvis J. Roche, Lake Charles, for John Gespor Bergeron.
Before DOUCET, C.J., and YELVERTON and WOODARD, JJ.
YELVERTON, Judge.
The main issue in this appeal is the classification of an annuity account in a community property partition. The trial judge found that it was almost entirely community property. We find that this was error, and we will amend the judgment to state the correct proportions of what was community and what was separate.
John and Doris Bergeron were married in 1981 and divorced in 1995. John had $216,000 in settlement funds for injuries he received before the marriage. In 1985 he deposited $100,000 of the settlement in an annuity account with Minnesota Mutual Life Insurance Company.
From 1988 to January 17, 1994 John made seven withdrawals of interest. On January 17, 1994, John made a withdrawal of $21,905.96. This withdrawal consisted of all of the remaining interest accrued to that time, plus $10,000 of the principal. When the account was closed on April 4, 1995, it had an ending balance of $90,000 in principal and $5,664.50 of interest.
It was never disputedin fact, conceded throughoutthat the $100,000 deposit was separate property. When the account was opened John did not file an affidavit to reserve the interest as his separate property, as he might have done by virtue of La.Civ. Code art. 2339. He did not file such an affidavit until July 7, 1993. As a consequence, John acknowledged that, prior to the *201 affidavit, all interest earned on the account became community property.
The parties also never contested that up until the $10,000 in principal was withdrawn on January 17, 1994, all of the withdrawals were of interest, with no invasion of the principal. John and Doris each so testified. Jeanne Boudreaux, an employee of Ben Terrell & Associates, the local Lake Charles firm which handled the Minnesota Mutual annuity account, was familiar with the account, and she testified that these withdrawals were interest withdrawals. She also testified that on January 17, 1994, the $21,905.96 withdrawal consisted of $11,905.96 in interest and $10,000 in principal. She said that the account balance on April 4, 1995 was $5,664.50 of interest and $90,000 of principal. Documentation from Minnesota Mutual filed in evidence confirms these figures, and itemizes the total of interest earned amounting to $90,061.90, which includes the interest of $5,664.50 earned after the last withdrawal on January 17, 1994.
The trial judge recognized that the initial deposit of $100,000 was separate property and that most of the interest earned on the deposit was a civil fruit of the separate property which by application of La.Civ.Code art. 2339 became community property. However, the trial judge ruled that $89,967.90 of the $95,664.50 that remained in the account on April 4, 1995 was also community property, and only the balance, or $5,696.60, was separate. The trial judge's mathematical reasoning in reaching these figures is not hard to follow, but it is hard to understand. He reasoned that, based purely on the documentary evidence, there was no clear indication as to whether the withdrawals invaded the principal or the interest of the account, and that therefore an inseparable commingling had occurred which required that all of the remaining balance be classified community. The only exception, his reasons for judgment indicated, was the item of $5,696.60, which was the difference between the total withdrawals and the initial investment: that difference, he believed, retained its classification as separate property.
The law on which the trial court relied in reaching this conclusion was the case of Cutting v. Cutting, 625 So.2d 1112 (La.App. 3 Cir.1993), writ denied, 93-2770 (La.1/7/94), 631 So.2d 453. The trial judge correctly understood the Cutting case as holding that, when community and separate funds are commingled in the same account, any withdrawals from that account are presumed to first deplete the spouse's separate funds, absent contrary evidence. The trial judge in our present case believed that the burden of proof was on John to show that the withdrawals were not from his separate funds. Because the trial judge's interpretation of the evidence was that John had failed in his proof, the judge indulged in the assumption that all eight withdrawals were from the principal, i.e., John's separate funds, and not from the community fruits.
The evidence is to the contrary. The trial judge was clearly wrong and made an error of fact in finding that the character of the withdrawals could not be identified as principal or interest. All of the evidence, including even the testimony of Doris, established that the withdrawals were from interest only until the $10,000 principal withdrawal was made on January 17, 1994. Every witness said so, the documents said so, and the record discloses that this was the common understanding of the parties and their attorneys throughout the trial of this cause. Throughout the transcript of testimony, the questions and answers repeatedly distinguished between the withdrawals as interest and the remainder of the deposit as principal. A proper analysis of the evidence shows that, until July 7, 1993, there was a commingling of community and separate property in the annuity account, only in the sense that in the same account there was interest and also principal. Beyond that, very little difficulty is encountered in identifying the separate property and tracing the origin of the amounts withdrawn.
It follows that the separate property remained intact and only the interest was withdrawn until January 17, 1994, at which time $10,000 of the principal was taken out. Until July 7, 1993, interest earned on the deposit was community. After the filing of the affidavit establishing separateness of the fruits on July 7, 1993, there were withdrawals *202 of interest totaling $23,583.96 which occurred on August 30, 1993 and January 17, 1994. Because these withdrawals occurred after the filing of the affidavit, some part of the interest was necessarily separate property; however, no evidence was introduced to establish what part. As to the $23,583.96 of interest withdrawn after the 1993 affidavit, the separate property cannot be identified; we would have to guess. So this was an instance of commingling, and we will recognize all of that withdrawal as community property.
The withdrawal on January 17, 1994, depleted the interest, and, hence, all the community funds in the account. That withdrawal also included $10,000 of separate money. So all interest earned on the account after January 17, 1994, that being $5,664.50, was separate property. We calculate, accordingly, that as of the date it was closed on April 4, 1995, what remained in the account, $95,664.50, was separate property.
John also argues on appeal that he should be reimbursed for ½ of the payments he made, after termination of the community, on the truck note, a community obligation. The payments came from his separate funds. The trial judge did not allow this reimbursement. This was not error. Although this issue was not addressed in the written reasons for judgment, the record reflects that John had possession of the truck after the community terminated. In the partition, he acquired full ownership of the truck. We assume that the trial judge did not allow the reimbursement credit because this court has held, in Preis v. Preis, 94-442 (La.App. 3 Cir. 11/2/94), 649 So.2d 593, writ denied, 94-2939 (La.1/27/95), 649 So.2d 392, that a spouse, who had the possession and exclusive use of a former community vehicle, was not entitled to reimbursement for the notes paid with separate funds. The Preis holding applies to the present case. John is not entitled to reimbursement for the payments he made on the truck note after the community terminated.
At the conclusion of the trial court's reasons for judgment the court ordered a detailed partition. For the reasons assigned above, we amend the partition in the following particulars:
In the list of Community Assets, Item (9), designated as Minnesota Retirement Account, is deleted entirely. The Total of Community Assets is changed to read $139,427.34. The Recapitulation of Community Assets is changed to read $133,429.15.
Under the section describing the partition of the community that was allocated to Doris Mae Bergeron, Item (4), the Pro-rata Share of Minnesota Annuity Funds, is deleted entirely and the net value of her portion is changed to read $58,712.08. Under the community allocated to John Gespor Bergeron, Item (4), his designated Pro-rata Share of Minnesota Annuity Funds, is deleted entirely and the net value of his share of the community is changed to read $74,687.00.
Under credits due John Gespor Bergeron, the two figures listed in Items (1) and (2) having to do with the amount of his separate funds used to pay off the Mercury Marquis and the Prowler camper, are eliminated and the single sum of $5,000 is substituted for both, representing one-half of $10,000 as his separate property used for the payoff of these items. The total of credits due John Gespor Bergeron is changed to read $7,132.58. The amount of the equalizing payment owed, now from John Gespor Bergeron to Doris Mae Bergeron, is $1,776.36.
In all other respects the partition as ordered by the trial judge is affirmed. Doris Mae Bergeron will pay the costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED.
WOODARD, J., concurs and assigns written reasons.
WOODARD, Judge, concurring.
I respectfully concur, as there is one part of the opinion that I believe deserves an additional comment.
Mr. Bergeron argues on appeal that he should be reimbursed for one half of the payments he made after termination of the community on the truck note, which was a community obligation. The payments were *203 made from his separate funds. The trial court did not allow reimbursement. This portion of the trial judge's opinion was upheld by us because of this court's holding in Preis v. Preis 94-442 (La.App. 3 Cir.11/2/94), 649 So.2d 593, writ denied, 94-2939 (La. 1/27/95), 649 So.2d 392.
Reimbursement issues are governed by La.Civ.Code art. 2365, which states:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Nevertheless, if the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse's share of the community.
Purely by judge made law and without citation to any legal authority, an exception to Article 2365's provisions requiring reimbursement for payment of a community obligation with separate property of a spouse has developed in relation to payment of the notes of a vehicle that is primarily used by the spouse seeking reimbursement for one half the amounts paid on the community obligation. See, Gachez v. Gachez, 451 So.2d 608 (La.App. 5 Cir.), writ denied, 456 So.2d 166 (La.1984); Davezac v. Davezac, 483 So.2d 1197 (La.App. 4 Cir.); Dillenkoffer v. Dillenkoffer, 492 So.2d 71 (La.App. 5 Cir.1986), writ denied, 494 So.2d 333 (La.1986); Meyer v. Meyer, 553 So.2d 943 (La.App. 4 Cir.1989); Guillaume v. Guillaume, 603 So.2d 235 (La. App. 4 Cir.1992), and Preis v. Preis, supra.
The rationale for these decisions is that the vehicle is movable property, rather than immovable property, although Article 2365 makes no such distinction. Second, that the vehicle will tend to depreciate rapidly over time and that it would be inequitable for the spouse seeking reimbursement to have the full use and benefit of the movable at the expense of the other spouse. Gachez, 451 So.2d at 613-14.
The first circuit does not share this view. In Williams v. Williams, 509 So.2d 77 (La. App. 1 Cir.1987), that court found that the vehicular debt was a debt of the community which had been paid from the appellant's separate estate. They saw no reason to deny the appellant reimbursement for one-half of his separate property used to pay the note on the vehicle. The court committed that Article 2365 does not make a distinction between movable and immovable property, which is a view that I share.
This circuit's and the fourth and fifth circuit's departure from the plain language of Article 2365 on this issue has the potential to lead to absurd results. For example, even though by this court's ruling herein, Mr. Bergeron has been denied reimbursement for one half of his separate property, which he expended on a community obligation, the vehicle remains co-owned property after termination of the community for which he owes his spouse the duty of an accounting under Article 2369. Assuming for the sake of argument that within three years, Mr. Bergeron deliberately, and in bad faith, destroyed the vehicle, seemingly, his spouse could seek an accounting for his actions and would be entitled to an amount to compensate her for her loss of her one half of the value of the vehicle, even though by our ruling she was not required to reimburse Mr. Bergeron for one half of his separate property he paid for the vehicle in which they were co-owners after termination of the community.
This circuit's and the fourth and fifth circuit's departure from the plain language of Article 2365 on this issue also has the potential to lead to even greater inequities than those which the courts previously tried to prevent. For example, what would we have done in Mr. Bergeron's case if just prior to the divorce, he had purchased a new Town Car, a community asset of which his wife maintained exclusive use and occupancy after *204 the divorce, and he paid cash for it? He has exclusive use and occupancy of the community truck which is not yet paid off. He pays those notes after the divorce. Given the logic of Preis and its predecessors, she pays nothing for her exclusive use of the community asset, while he pays for his use of the community asset in the form of making payments from his separate funds on a community obligation and not being permitted a reimbursement.
Even more troubling is the recent extension, of this automobile exception to Article 2365, to other property. The reasoning of the court in Davezac, 483 So.2d at 1199, was extended in Jurgelsky v. Pinac, 614 So.2d 1331 (La.App. 3 Cir.1993) to community owned telephone equipment which the husband enjoyed the exclusive use of after termination of the community. He was denied reimbursement for separate funds used to satisfy the community debt owed on this equipment.
Where does this process stop? A court's departure from applying the plain language of the Civil Code to render what seems to be an equitable decision in one situation can have unintended consequences later for the whole body of law, completely usurping the legislative function. The logic, employed in the line of cases holding for no reimbursement, dictates that we apply the same rationale to all property which might depreciate and which the party seeking reimbursement has exclusive use. Could this also not mean immovable property in a declining or depressed economy?
Having said all that, while I disagree with this court's decision herein to deny reimbursement under the present circumstances as being contrary to the clear meaning of Article 2365, I recognize that it is the prevailing view of our circuit and accept it as such.