MARVIN, Judge.
The wife appeals a 1986 judgment rejecting her demands to enforce a community property partition and settlement that was “approved” and recognized in a 1977 separation judgment.
She contends that certain provisions of the 1977 agreement entitle her
—to $24,500, the proceeds from community cattle that the husband sold shortly before the 1977 partition, and
—to one-half of the husband’s retirement pay he began receiving in 1979.
We reverse and render judgment granting some of the wife’s demands.
THE 1977 CONTRACT AND ITS IMPLEMENTATION
The contract, reproduced as an appendix with paragraphs numbered by us, did not mention the debts of the community and did not partition 53 acres on which the family home and other improvements were located or unconditionally partition retirement benefits which were to be paid to the husband by his former employer when the husband retired. In this respect, the contract did not discharge or relieve the litigants from any further accounting to the community or fully and finally settle the litigants’ claims, as the contract purports and declares in its penultimate paragraph.
About two months before the 1977 contract and judgment the husband sold all of the community cattle for $24,500 (paragraph 1) and applied that money to community debts. The wife did not learn of this until after the contract was signed. She contended that some of the cattle were sold after the 1977 contract.
When the contract was signed in 1977, the husband was paying more than $500 in monthly alimony and support payments. The judgment of separation provided that after a divorce, the husband shall pay monthly $200 permanent alimony and $300 child support. The litigants do not dispute that they were divorced on December 8, 1978, although that judgment is not in the record lodged in this appeal.
On the 1979 rule of the husband, filed about a month after the divorce, a judgment was signed reducing permanent alimony to $100 per month and continuing the child support at $300 per month. That judgment was not appealed. The husband paid the alimony and child support that judgment ordered until the minor daughter of the marriage reached the age of 18.
In August 1983 when the daughter turned 18, the husband filed a rule to terminate alimony and child support. This rule was not called for a hearing and was still pending when the wife filed her action in October 1984. In Huckabay v. Huckabay, 485 So.2d 165 (La.App. 2d Cir.1986), we reversed the trial court’s ruling on an exception of prescription and remanded for *734 proceedings which resulted in the 1986 judgment that is here appealed.
After his daughter reached 18, the husband has periodically paid to or for her living and education expenses a total of at least $6,282 through June 1986. The husband said these payments were made in response to a verbal agreement with his wife in 1983, made after he filed the rule to terminate alimony and child support, to the effect that if he would pay for the daughter’s living expenses and college education, the wife would not demand anything of him other than the $100 per month permanent alimony. The trial court believed the husband’s testimony and did not believe her assertions that she did not verbally make such an agreement and that she at no time agreed to give up her right to claim one-half of her husband’s retirement pay (paragraph 3(B)).
The husband retired in April 1979. His monthly retirement pay, initially $833, gradually increased to $978 by July 1986. The husband has paid to his wife $100 per month permanent alimony as ordered by the trial court in 1979. The wife’s initial demand, for a part of the husband’s retirement pay was made in her petition of October 11, 1984.
SUSPENSIVE CONDITION RE: RETIREMENT BENEFITS
The 1977 contract clearly conveys to the wife one-half interest in the husband’s retirement credits, even though the husband did not retire until 1979. Paragraph 3B. That paragraph suspends her right to receive her interest by stating:
as long as [the husband] is paying $500 per month alimony [$200] and support [$300], [she] shall not receive any additional income from the Retirement System. (Our bracketed material.)
The trial court’s judgment reducing the monthly permanent alimony from $200 to $100 was signed March 15, 1979, shortly before the husband retired. The wife did not appeal that judgment or later claim any arrearage under the 1977 contract. This circumstance lends credence to the trial court’s assessment of credibility affecting the issue of whether the 1977 contract was verbally modified in 1983.
Also pertinent to this issue are the facts that the wife acknowledged that she knew that the husband began providing the daughter’s monthly living and education expenses after she reached adulthood in August 1983, and that the husband continued to pay $100 per month alimony even though he had filed a rule to terminate it.
We give great weight to the trial court on matters of credibility and proof of corroborative circumstances relevant to the existence of an agreement or contract. CC Art. 1846; Feazel v. Feazel, 471 So.2d 851 (La.App. 2d Cir.1985).
The trial court reasoned that the wife was not entitled to retirement pay because the 1977 contract was “superseded” by the 1979 judgment reducing permanent alimony to $100 and because of the 1983 “verbal” modification of the 1977 contract. The wife contends that the trial court erred in this respect because she and the husband affirmatively testified that they did not expressly consider or discuss the contractual provision about retirement when the child support was discussed in 1983. We must agree, as we shall explain.
The husband’s testimony about the 1983 verbal agreement was that he understood his wife to effectively say that if he would provide for the daughter’s living and education expenses she would be satisfied with and would not demand any more of him other than the $100 monthly alimony he had been paying since 1979. The wife denies that she made such an agreement and contends any verbal modification of the community property settlement would be invalid because that agreement was a “compromise” which by CC Art. 3071 must be reduced to writing. This agreement is not a true “compromise” but rather is a non-judicial partition between co-owners. Any compromise language is surplusage. See Gates v. Gates, 485 So.2d 114 (La.App. 2d Cir.1986). The formality requirements of Art. 3071 for a compromise do not apply here.
*735 The testimony of the litigants regarding their respective intent at any given time with respect to child support, permanent alimony, and sharing of the husband’s retirement pay demonstrates only that the minds of the litigants barely met on some things and not at all on other things. The testimony also demonstrates that the contract, as written in 1977, leaves much to be desired.
Neither party expressly considered nor discussed the retirement pay matter in 1979 or in 1983. In this respect we cannot agree with the trial court’s ultimate holding.
Interpretation of a contract is the determination of the common intent of the parties. CC Art. 2045. Any doubtful provision must be interpreted in light of the nature of the contract, equity, usages, [and] the conduct of the parties before and after the formation of the contract ... CC Art. 2053. When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provision of the contract, but to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. CC Art. 2054.
Equity, as used in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. CC Art. 2055. This record does not indicate which party furnished the text of the contract. See CC Art. 2056. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation. Yet if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. CC Art. 2057.
With these codal directions, the record, and the factual findings of the trial court in mind, we shall proceed to resolve this litigation.
The 1977 contract clearly conveys to the wife one-half of the husband’s interest in his retirement. It suspends her right to receive one-half of his retirement for as long as he pays her $500 for the support of herself and their daughter. When the contract was signed, the husband was paying more than $500 per month support. The judgment of separation provided for his monthly payments to be reduced to $500 ($300 child support, $200 permanent alimony) after the divorce. The husband did not retire until after the divorce. When he retired, his monthly retirement income was $833, one-half of which is $416.50. His monthly court-ordered payment was then $400. These facts support the husband’s understanding of the 1977 agreement that he did not owe the wife any of his retirement pay as long as he was paying the court-ordered support, notwithstanding that the amount had been reduced from $500 to $400 before he retired.
The manner in which the litigants interpreted this contract between 1977 and 1984 obviously meant that the husband would pay $500 or some reasonably equivalent amount to both the wife and the daughter. This $500-reasonable amount would be paid until such time as the daughter’s support was otherwise provided for.
When the daughter became otherwise able to support herself, only then would the wife be entitled to one-half the retirement. Glaringly absent, however, from the 1977 contract and from the litigants’ testimony about express discussions thereafter, is any consideration or contemplation of whether the husband would be then required to pay both permanent alimony and one-half his retirement. If that absent and implied question is answered affirmatively, the patent question is whether the husband could then use the one-half retirement pay to his wife to reduce or terminate permanent alimony.
Under the recited circumstances, and because the contract mentions the retirement pay in connection with alimony and support, we can only conclude that the parties *736 must have intended in 1977 that the wife was to receive either the reasonable equivalent of the court-ordered alimony and child support ($500), or one-half of the husband’s retirement pay, but not both.
We hold, therefore, that the 1977 agreement was not verbally modified except to the extent that the husband agreed to waive the benefit of the law that automatically terminates child support at age 18 (LRS 9:309) and to pay an amount that is reasonable and necessary for support to his daughter for her college education and to continue to pay the monthly alimony to the wife as ordered by the court. We further hold that the litigants must have intended in 1977 that once the daughter, by college education or otherwise, became capable of supporting herself, the suspensive condition of the 1977 contract would be negated, and at that time the wife shall become entitled to claim one-half of the retirement pay in lieu of permanent alimony. Any other construction of the retirement provision is strained.
THE CATTLE
The husband admitted he did not tell his wife that the cattle had already been sold when the 1977 agreement was signed. (Paragraph 1-3.) He contended, and she denied, that she knew they had been sold. Under such circumstances, we must interpret the contract favorably toward the wife and against the obligor-hus-band. CC Art. 2057. The wife then is entitled to the proceeds from the sale of the cattle by the husband shortly before the agreement was signed. Because the record shows that the husband paid community debts with the proceeds and because the contract was silent as to partition of the debts of the community, the payment of the community debt by the husband, even with the wife’s funds, inured to her benefit. See Bailey v. Jones, 439 So.2d 475 (La.App. 1st Cir.1983), writ denied. Under these circumstances, she is entitled to only one-half of the proceeds, or $12,-250.
The wife contends that not all of the community-owned cattle were included in the sale for $24,500. She seeks $12,092 as the value of cattle still on hand as of December 81, 1977, according to the husband’s tax return for that year. ' The trial court, while not expressly finding whether all community-owned cattle were included in the $24,500 sale, denied the wife’s demand for the proceeds on the grounds that the husband used the proceeds to pay community debts. This holding and reasoning implicitly finds that all of the cattle were sold in 1977. This finding is clearly supported by the testimony of the husband and of others knowledgeable about the circumstances in 1977. The discrepancy in the tax return was explained, and does not mandate a different conclusion. The wife’s recovery for her interest in the community-owned cattle will be limited to $12,250, one-half the proceeds.
This opinion adjudicates only the issues specifically mentioned, the alimony-support-retirement dilemma and the disposition of the proceeds from the sale of the community cows.
DECREE
The judgment of the trial court is reversed and judgment is hereby rendered in favor of the wife and against the husband
for $12,250, being one-half the proceeds from the sale of community cattle, with interest from judicial demand, and declaring that paragraph 3(B) of the contract appended hereto entitles the wife to claim one-half of the retirement pay from the husband in lieu of permanent alimony at such time as the daughter born to the litigants becomes able to support herself arid is no longer requesting and receiving support and educational expenses from the husband.
Costs here and below are assessed one-half to each litigant.
REVERSED AND RENDERED.
EXHIBIT B
ACT OF PARTITION AND COMMUNITY PROPERTY SETTLEMENT
THIS AGREEMENT AND ACT OF PARTITION AND COMMUNITY PROP *737 ERTY SETTLEMENT entered into by and between LESTER SHIELDS HUCKABAY, III, and SARAH MORGAN HUCKABAY, husband and wife,
WITNESSETH:
The said parties declared that they desire to partition, settle and liquidate the community of acquets and gains existing between them in the following manner.
1. The said Lester Shields Huckabay, III, in consideration of the property received by him and the other conditions herein contained, has and does, by these presents, GRANT, BARGAIN, SELL, CONVEY AND DELIVER unto Sarah Morgan Huck-abay the following described property, to-wit:
1: All household furniture and appliances situated in the family home.
2: 1977 Lincoln Mark V automobile.
3: The proceeds of the sale of cattle and other items of community property sold by Lester Shields Huckabay, III.
TO HAVE AND TO HOLD unto Sarah Morgan Huckabay, her heirs and assigns forever.
2. In consideration of the foregoing and the other conditions herein contained, the said Sarah Morgan Huckabay does, by these presents, GRANT, BARGAIN, SELL, CONVEY AND DELIVER unto Lester Shields Huckabay, III, the following described property, to-wit:
1: 1972 Ford F-250 pick up truck.
2: International Diesel tractor.
3: 15 foot pasture clipper.
4: 6 foot pasture clipper.
5: All hay in the bam.
TO HAVE AND TO HOLD unto Lester Shields Huckabay, III, his heirs and assigns forever.
3. The following described community property is not partitioned, but shall remain in undivided ownership with each party owning an undivided one-half (½) interest thereof:
(A) NEV4 of NWV4 less that part South and West of U.S. Highway No. 71 and that part of SE1/» of NW1/) East and North of U.S. Highway No. 71, all situated in Section 35, Township 13 North, Range 10 West, Red River Parish, Louisiana, containing 53 acres, more or less, together with all buildings and improvements thereon.
It is agreed that the parties shall make every effort to sell the above described property and when it is sold, after payment of debts and expenses, Sarah Morgan Huckabay shall receive $50,000.00 to purchase a lot ot lots and build a new home, the title of which shall be placed in her name and the names of Lester Shields Huckabay, IV, and Terri Ruth Huckabay, and Lester Shields Huckabay, III, shall have no interest therein. In the event the parties do not agree upon the sale of the above described property prior to a divorce being granted, then the property shall be sold for the best price obtainable, or if this cannot be agreed to it shall be partitioned by licitation at the instigation of either party hereto, and after payment of the present indebtedness against the property and the expense of the partition then Sarah Morgan Huckabay shall receive all other proceeds to the extent of $50,000.00 and Lester Shields Huckabay, III, shall receive any proceeds in excess of $50,000.00.
(B) The interest in Louisiana State Police Retirement System and any value or right to retirement shall remain undivided with each party hereto owning an undivided one-half (½) interest thereto and each party shall have an equal voice in determining any option which may be selected at the time of the retirement of Lester Shields Huckabay, III. It is understood, however, that so long as Lester Shields Huckabay, III, is paying $500.00 per month alimony and support, Sarah Morgan Huckabay shall not receive any additional income from the Retirement System.
4.The two (2) Masonic rings which are in the possession of Lester Shields Huckabay, III, shall be given to Lester Shields Hucka-bay, IV, if he becomes a Mason. Each party shall retain their wedding rings.
The parties waive the mortgage certificate usually required and exonerate the Notaries on account thereof.
*738 5. Subject to the agreements herein contained as a result hereof, the parties discharge each other from any further accounting to the community existing between them; it being fully liquidated, compromised and settled as above set forth. This instrument and agreement is executed in full and complete settlement of all claims either party hereto may have against the other whether the community against the separate estate of either party or whether the separate estate of either party against the community or whether the separate estate of either party against the separate estate of the other party. This instrument is a complete and final settlement of all claims.
THUS DONE AND SIGNED by the parties hereto, in the presence of the witnesses and Notaries Public hereinafter shown, on this the 6 day of October, 1977.