543 So.2d 952 (1989)
Harry R. CABRAL, Jr.
v.
Barbara Ann Ward, Divorced Wife of Harry R. CABRAL, Jr.
No. 88-CA-850.
Court of Appeal of Louisiana, Fifth Circuit.
April 12, 1989.
Rehearing Denied May 17, 1989.
*953 Harry R. Cabral, Jr., Metairie, pro se.
Floyd J. Reed, New Orleans, for defendant-appellant.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Barbara Ann Ward Cabral, defendant-appellant, from two judgments rendered in this divorce proceeding. In the first, Mrs. Cabral was adjudged to owe Harry R. Cabral, Jr., her former husband and plaintiff-appellee, the sum of $329.535.51, after the partition of community assets and liability; in the second, she was denied permanent alimony.
As to the monetary award, we find that the judgment resulted from legal error, and therefore reduce it to zero in accordance with the provisions of La.Civ. Code arts. 2365, and 2367. Under these articles, if the separate property of a spouse has been used to satisfy a community obligation, or for the use, improvement, or benefit of community property, that spouse is entitled to reimbursement of one-half of the amount of separate property so used to the extent of the community. Article 2365 further provides that the other spouse can only be liable for amounts exceeding community assets if the separate property was used for ordinary and customary expenses of the marriage, or for support, maintenance, and education of children. It has further been held that the reimbursement of one-half of the separate property used for community purposes is to be made from the other spouse's one-half interest in the community, rather than from the total mass of community property, Williams v. Williams, 509 So.2d 77 (La.App. 1st Cir.1987).
In the present case, the trial court summarized his disposition of the community as follows:
COMMUNITY ASSETS AND LIABILITIES ALLOCATED TO MR. CABRAL:

All Assets $827,917.00
All Liabilities (724,110.48)
 ____________
Net Allocation to Mr. Cabral
 $103,806.52
Net Allocation to Mrs. Cabral
 -0-
Equalizing sum owed to
Mrs. Cabral before reimbursement $51,903.26
Reimbursements owed to
Mrs. Cabral from Mr.
Cabral $67,385.81

*954
Reimbursements owed to
 Mr. Cabral from Mrs.
 Cabral $448,824.58
Total amount owed to Mr.
 Cabral from Mrs. Cabral
Net reimbursement owed
 to Mr. Cabral of $448,824.58
 - $67,385.81 =
 $381,438.77 less equalizing
 sum owed to Mrs.
 Cabral before reimbursement
 of $51,903.26 $329,535.51
 ===========

The most significant figure in this accounting is the $448,824.58 reimbursement owed to Mr. Cabral, which represents one-half of his separate funds used to satisfy community obligations and preserve community assets. Mrs. Cabral urges that this figure should be reduced to $26,456.58, because most of the funds were expended for obligations which should have been ruled to be Mr. Cabral's separate debts. She further urges that the figures for total community assets and liabilities should also be adjusted, and after so doing she should be awarded $146,120.37, as her share of the community. She alleges, in support of this result some fifteen errors in the trial judge's accounting, but as will appear below, we need only address two of these.
The major contested issue is the status of a piece of property at 8870 Chef Menteur Highway in Orleans Parish. This property was purchased by both parties in 1979, during the existence of the marriage. A commercial building was erected on the site and leased to West Building Materials for a fixed rental of $78,000 per year for thirty years. Mr. Cabral testified that although this investment appeared sound at the outset, two major problems soon developed. The first was that the $200,000 estimated cost of the building was too low by half and the eventual cost was $400,000. The second was that the original interest on the mortgage was 2% above prime, and when interest reached 23% in the early 1980's, the fixed rent lease did not generate enough funds to cover interest. Because other funds were not available to service the loan, the accumulating interest increased the total note to $1.3 million dollars by mid-1983. In June of that year, Mr. Cabral sold a piece of his separate property and realized a profit of $566,390. This entire amount was applied to the Chef property note. In January 1984, while the parties were still married, the remaining portion of the note was renegotiated for some $520,000. This new account bears the names "Mr. and Mrs. Harry R. Cabral, Jr". Further evidence showed that at the time of trial the balance on this note was $507,629.51, and the property had an appraised value, including the lease, of $408,000. Between the parties separation and partition of the community, Mr. Cabral also paid from his separate funds some $134,000, in interest on this mortgage.
Mrs. Cabral urged at trial, and re-urges here, that the Chef property venture was a separate obligation of Mr. Cabral and alternatively that even were it a community obligation, Mr. Cabral is liable to the community because the loss was occasioned by fraud or bad faith. We, like the trial judge, reject both assertions.
As to the first, La.Civ.Code Art. 2361, provides that obligations incurred by a spouse during the existence of the community are presumed to be community obligations. There is no dispute that the property was acquired during the community and that Mrs. Cabral was a party to the act of sale by which the property was acquired. In the absence of further evidence to rebut the presumption of community, and given the clear evidence that this was a community venture, we can only conclude that the trial judge properly adjudged it to be such. Although it is further argued that this venture was not originally undertaken for the benefit of the community and is thus a separate property obligation under La.Civ. Code Art. 2363, there was absolutely no proof to show that the community would not have reaped the profits of the investment had it been successful. There is thus no reason to hold that the community should not be liable for the unfortunate loss. We also note here that although the net loss is that of the community, this obligation was neither for the ordinary expenses of the marriage nor for support of children.
*955 Similarly, there is a complete absence of proof to show that Mr. Cabral committed fraud or acted in bad faith in his management of this venture. Although he admitted that he might have been more attentive in managing the project, the trial judge correctly noted that Mr. Cabral also invested during the marriage substantial separate funds to reduce the extreme difficulty into which the community had fallen because of the high interest rates prevailing at the time. We further agree with the trial judge's conclusion that there was simply no evidence to show that Mr. Cabral continued to impoverish the community or to take advantage of it in any way. We therefore reject this argument as well.
To summarize the above discussion, we conclude that Mr. Cabral used at least $566,390, (not counting interest payments between separation and partition) of his separate property to satisfy a community obligation; that the Chef property is a community asset worth $408,000 and encumbered by a $507,629.51, mortgage which is a community obligation; and that the obligation was not incurred for expenses of the marriage.
We now turn to Mrs. Cabral's proposed accounting. As indicated above, some fifteen items of property, claims and setoffs are alleged to have been mischaracterized or miscalculated in the trial judge's accounting, including of course the Chef property. The figures which would result if all of these proposed adjustments were allowed, are as follows:
RECAPITULATION

Total Assets of
 Community $345,230.00
Total Liabilities
 of Community 191,597.27
 ____________
 $153,632.73
Total allocated to
 Mr. Cabral $153,632.73
Total allocated to
 Mrs. Cabral -0-
 ___________
 $153,632.73
 ÷ 2
 ___________
 $76,816.37
Reimbursements
 owed to Mrs.
 Cabral by Mr.
 Cabral $93,760.00
Reimbursements
 owed to Mr.
 Cabral by Mrs.
 Cabral 24,456.00
 __________
Net reimbursements
 owed
 Mrs. Cabral by
 Mr. Cabral $69,304.00
 ___________
Total Sum owed
 Mrs. Cabral by
 Mr. Cabral and
 for which she
 should have
 judgment $146,120.37
 ___________

Having found that the Chef property is a part of the community, and adding back in the appropriate amounts, the figures are:

Assets as per Mrs. Cabral
 $345,230.00
Value of Chef Property 408,000.00
 ___________
Total Assets $753,230.00
Liabilities as per Mrs.
 Cabral 191,597.27
Mortgage on Chef Property
 507,629.51
 ___________
Total liabilities $699,226.78
Net Estate $54,003.22
One-half Net Estate $27,001.62
Net reimbursement
 owed Mrs. Cabral $69,304.00
 ___________
 $96,305.62
Reimbursement of one-half
 of separate funds
 used for Chef mortgage
 by Mr. Cabral (at
 the least, $566,399.00) 
 _____________
Due Mr. Cabral 

Thus, after making all of the adjustments urged by Mrs. Cabral, except those for the Chef property, her half of the community is still insufficient to reimburse Mr. Cabral for one-half of his separate funds used to satisfy community obligations. We therefore need not determine whether these various other adjustments should be made.
On the other hand, because we have found that the community obligations paid by Mr. Cabral from his separate funds were not for ordinary expenses of the marriage or support of children, his recovery is *956 limited by La.Civ.Code Arts. 2365 and 2367, and Williams v. Williams, supra, to Mrs. Cabral's community property interests. He is not entitled to a judgment against his former wife beyond those interests, and the judgment of the trial court against Mrs. Cabral in the amount of $329,535.51, must therefore be reduced to zero.
The second error urged by Mrs. Cabral in regard to the trial judge's accounting is that a number of silver pieces which he determined to be community property were in fact her separate property. It is not disputed that many of these pieces at one time belonged to Mrs. Cabral's parents, and were in the Cabral home at the time of the parties' separation. What is disputed is whether these items were given to the community, or given to Mrs. Cabral as her separate property. Mr. Cabral testified that the silver was given to both him and his wife, but Mrs. Cabral stated otherwise. Although Mrs. Cabral's father testified that it was his understanding that the pieces were given to his daughter, he could not recollect how that had been made clear to Mr. Cabral. He also stated that Mr. Cabral had the privilege of using the pieces. Because the trial judge based his apparent determination that the items were gifts to the community for the use of both parties on the testimony of these witnesses, that determination can only be set aside if his credibility determination was manifestly erroneous, Canter v. Koehring Co., 283 So.2d 716 (La.1973), Campo v. Dupre, 470 So.2d 234 (La.App. 4th Cir.1985). We find no such error here, and therefore affirm that finding.
Mrs. Cabral also lists among these pieces a set of silver flatware and a set of crystal. Mr. Cabral testified that silverware belonging to him and Mrs. Cabral before their marriage had been mixed together. All of this silverware was stolen, and the insurance proceeds were used to replace the lost pieces. Because the present set was acquired during the marriage, it is presumed to be community property under La.Civ.Code art. 2340. Mrs. Cabral testified that her silver was stolen and replaced with insurance proceeds, but is not specific on what the value of her pieces might have been, or what particular pieces of hers were stolen. On this showing, we cannot say that the trial judge erred in concluding that the silver had been commingled and that Mrs. Cabral did not trace her own items with sufficient particularity to overcome the presumption of community, Campo v. Dupre, supra. Similarly, the crystal was a gift to Mrs. Cabral from a family friend, for the use of the community, and the trial judge did not err manifestly in holding it to be community property.
Mrs. Cabral has also filed in this court an exception of no right of action in regard to certain Peruvian artifacts which belong to a person not a party to this suit. The trial judge ordered that these items be returned to Mr. Cabral by Mrs. Cabral, but she contends that because Mr. Cabral did not assert any right of ownership in the articles, he has no right to their possession. For the following reasons, we overrule this exception.
The evidence shows that the items in question were in a small safe in the community home. When Mrs. Cabral moved out of the house, she took the safe with her. Although Mr. Cabral did not assert in his petition a right of action to recover possession of certain of these items as a depositary, he did testify, without objection, that he was "holding them" for the owner. In this circumstance, the testimony served to enlarge the pleadings to state a depositary relationship between Mr. Cabral and the owner, La.Code Civ.Pro. art. 1154. Further, Mrs. Cabral did not assert ownership of the articles by the community, nor did she contradict Mr. Cabral's testimony that he was holding them for the actual owner.
The legal question raised by her exception here is thus, whether a depositary has a sufficient interest in the thing deposited to permit him to sue for recovery of possession from a third party who has taken the thing from him. In Klein v. Anderson, 4 Or.App. 262 (1906) the court stated that:

*957 Jurisprudence has recognized the right of a depositary, an administrator or a consignee, to an action to recover property entrusted to his possession and taken from him by a stranger. [citations omitted].
We see no reason to depart from this rule on the facts of this case. We are aware of Douglas v. Haro, 214 La. 1099, 39 So.2d 744 (1949), which held that when a depositary brings an action against a third-party tortfeasor who has damaged the thing deposited, the owner is a necessary party. While that case was remanded to permit joinder of the owner of the thing, it was before the court on an exception of no right of action which had been sustained by the trial and appellate courts, and thus, the matter had never been tried. The court noted that although no exception of non-joinder had been urged, in the interest of justice and to avoid a multiplicity of suits, remand for joinder of the owner for trial was proper.
Because Douglas v. Haro, was decided before promulgation of La.Code Civ.Pro. in 1961, when the distinction between necessary and indispensable parties was not clearly defined in the jurisprudence, we do not simply assume that the term was then used in the sense in which it appears in Article 642, of the present Code of Procedure. However, because the rationale of the ruling was to prevent multiple suits, the court obviously recognized that the right of the depositary against the third party for damage to the thing, and the right of the depositor for return of the thing, were actions that could proceed separately. In our opinion, this is in fact the meaning of art. 642, which states that necessary parties are those whose interest in the subject matter are separable and would not be affected by a judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy. Failure to object to nonjoinder of a necessary party by way of the dilatory exception also acts as a waiver of that objection. La.Code Civ.Pro. arts. 645 and 926.
In the present case, the owner of the artifacts would have an action against Mr. Cabral for return of the items or damages for their loss. That action is clearly separable from Mr. Cabral's action against his former wife for return of the objects to his possession. The owner is thus only at most, a necessary party to this action, and under Douglas v. Haro, Mr. Cabral's right of action for possession is not affected by failure to join the owner. We therefore overrule the exception of no right of action filed in this court, and decline to note the exception of nonjoinder of an indispensable party, La.Code Civ.Pro. art. 927.
The final issue here is the second judgment of May 12, 1988, in which Mrs. Cabral was denied permanent alimony. For the following reasons, we reverse that judgment and award Mrs. Cabral permanent alimony of $1,750 per month, retroactive to May 11, 1987, the date of judicial demand.
Permanent alimony may be awarded to a spouse who has not been at fault in the termination of the marriage and who does not have sufficient means for support, La. Civ.Code art. 160. Under this same article, the court shall consider the totality of the circumstances indicative of both parties' financial condition, Gottsegen v. Gottsegen, 503 So.2d 588 (La.App. 4th Cir.1987).
The pertinent evidence concerning Mrs. Cabral's situation is as follows. She was found not to be at fault in the termination of the marriage. At the time of the alimony hearing she was fifty-seven years old. She has a high school education and two years of college, but her only work experience was as an airline stewardess, a job she held for one year over thirty years ago. She is unable to type or operate any kind of office machinery, and has no other bookkeeping or secretarial skills. Several vocational experts gave conflicting opinions as to her employability, and two physicians likewise disagreed as to her functional capacity for work because of spinal arthritis. On this evidence of employability, the trial judge concluded that Mrs. Cabral was capable of working at an entry level job as a clerk or receptionist for at least minimum wage (about $600 per month), and we find no manifest error in that determination, *958 based as it was on the credibility of the experts.
At partition of the community, she received separate property consisting mostly of jewelry, silver and furs, having an appraised value of some $120,000. She also has an interest in a $50,000 savings account in both her and her father's name, which came from her mother's estate and is apparently encumbered by a usufruct in her father's favor.
The evidence further shows that during the parties' marriage they enjoyed a high standard of living. Their principal residence was a 5,000 square foot home in Metairie, and they owned vacation homes first in the Bahama Islands and then in Destin, Florida, to which they traveled by private airplane. They typically drove Lincoln automobiles and traveled extensively in Europe.
As previously shown, Mr. Cabral received all assets of the community by the judgment of partition. The family home was appraised at $315,000, and has an existing mortgage of $91,500, with tax and mortgage payments of $1200 per month. The Chef property, although heavily mortgaged, is nonetheless in a positive cash flow posture of two or three hundred dollars per month. He also received an interest of $17,500 in an airplane which costs $446 per month to maintain, but which he intends to sell.
While the trial judge concluded that the evidence failed to show Mr. Cabral's income with any reasonable precision, we conclude otherwise. He introduced a document showing his "cash flow" for the six month period between January 1, and June 30, 1987, which superficially shows his monthly income to be $2,150. Further examination of this document shows, however, that this figure represents his income after deducting house payments and taxes, car payments, maintenance for the airplane, over $5,000 in nonrecurring expenses, a $3,600 shortfall on the Chef mortgage (which has now been reversed to at least a $2,400 per year profit), past due taxes and $1,200 per month in alimony pendente lite. When his stated monthly income is adjusted for the airplane costs, Chef property income, and nonrecurring expenses, his monthly income is actually over $3,800 per month after payment of the house and car notes, back taxes and $1,200 per month in alimony. We are aware that he suffered very serious health problems in 1985, and has residual limitation on his ability to work. However, the "cash flow" sheet introduced in evidence by him shows his earning capacity with these residual limitations.
Mrs. Cabral submitted a list of her monthly financial needs which totals $4,471, per month. While we agree with the trial judge that this figure is excessive, we disagree with his conclusion that $1,300 per month would be sufficient for her monthly needs, and find instead that $2,500 per month is commensurate with her needs. However, because she was found by the trial judge to be capable of earning $600 per month, and considering her separate property, we rule that she is entitled to $1,750 per month in permanent alimony, which her former husband is readily able to pay. Further considering all of the circumstances of the parties, we make this award retroactive to May 11, 1987, the date of the final divorce between the parties.
For the foregoing reasons, the judgments of the trial court are amended to reduce the judgment against Mrs. Cabral to zero, and to order Mr. Cabral to pay permanent alimony to his former wife in the amount of $1,750 per month, retroactive to May 11, 1987. In all other respects, the judgments are affirmed.
AMENDED AND AS AMENDED, AFFIRMED.