561 So.2d 908 (1990)
James E. OLIVER, Plaintiff-Appellant,
v.
Joe Ann Cotton OLIVER, Defendant-Appellee.
No. 21438-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*909 Love, Rigby, Dehan, McDaniel & Goode, by Hani E. Dehan & Kenneth Rigby, Shreveport, for plaintiff-appellant.
J. Peyton Moore, Shreveport, for defendant-appellee.
Before MARVIN, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
This appeal arises from a judgment rendered in a suit for judicial partition of the community between James E. Oliver and Joe Ann Cotton Oliver. Mr. Oliver appealed, citing several alleged errors by the trial court. Mrs. Oliver answered the appeal.

FACTS
The parties were married June 3, 1959. Of this marriage two children were born, both of whom have now achieved majority. The parties physically separated in July of 1982. Mrs. Oliver moved to Lafayette, Louisiana, where she obtained employment. Mr. Oliver remained at the matrimonial domicile in Shreveport.
On September 23, 1982, Mr. Oliver filed a petition for separation. Mrs. Oliver did not contest these proceedings, and a judgment of legal separation was signed October 27, 1982. At this point, the community was dissolved, retroactive to the filing of the separation suit on September 23, 1982.
*910 On April 29, 1983, Mr. Oliver filed a petition for divorce. The divorce was granted by judgment signed on June 1, 1983.
On June 15, 1987, Mrs. Oliver filed a petition for judicial partition of the community property. After lengthy discovery proceedings, trial on the merits was held on February 10, 1989. On the same day, in response to Mrs. Oliver's claims for an accounting for community funds allegedly withdrawn by Mr. Oliver, Mr. Oliver filed an exception of prescription based on LSA-C.C. Art. 2369. This article provides that the obligation to account prescribes in three years from the date of the termination of the community property regime.
At trial, the parties entered into a joint stipulation which established a number of the community assets and their values, as well as outstanding community debts and some reimbursement claims. The stipulation set forth a formula for computing the value of Mrs. Oliver's interest in her husband's Riley-Beaird retirement plan.
The stipulation further outlined disputed community assets and values as well as disputed reimbursement claims asserted by the parties. The stipulation pointed out that disputed issues at the time of trial included the interest and/or rent claim by Mrs. Oliver against Mr. Oliver for his use and possession of the community home following the separation of the parties; Mr. Oliver's claim for interest payments in the amount of $3,766.17 made to CNB on a loan; Mr. Oliver's salary from March of 1982 until the termination of the community; and the formula to be used to compute the parties' reimbursement claims.
The stipulation also identified certain disputed withdrawals of community funds for which Mr. Oliver had not accounted. These included the following: (1) credit union withdrawal on July 22, 1982, in the amount of $1200; (2) credit union withdrawal on August 20, 1982, in the amount of $700; (3) withdrawal from Riley-Beaird savings and profit sharing plan on September 4, 1982, in the amount of $7,395.86; (4) loan against Prudential policy # XX-XXX-XXX, made on March 3, 1982, in the amount of $3,997.09; and (5) loan against Prudential policy # XX-XXX-XXX, made on March 3, 1982, in the amount of $2,375.48.
By a written opinion issued on March 8, 1989, the trial court sustained Mr. Oliver's exception of prescription as to all alleged withdrawals which Mr. Oliver made prior to the filing of the petition for separation, except for the sum of $5,000 which he withdrew from his checking account on September 20, 1982. (On September 4, 1982, Mr. Oliver withdrew community funds of $7,395.86 from the Riley-Beaird savings and profit sharing plan. He deposited these funds in his bank account. The check for $5,000 was drawn on this account.) The trial court found that it was "more probable than not that he had these funds in his possession on September 23, 1982." Because Mr. Oliver made no accounting of this $5,000, the trial court treated it as a community asset in his possession. (Later in its opinion, the trial court awarded this sum to Mr. Oliver. In the judgment, it is a community asset included in the calculation of the mass of the community.)
Next, the trial court considered the one remaining dispute as to classification of debts as community or separate. The trial court specifically found that Mr. Oliver was entitled to reimbursement as provided by law for interest payments he made in the amount of $3,766.17 on a CNB loan originally taken out by Mrs. Oliver to pay community debts prior to their physical separation. The original loan from CNB was a community obligation, which Mr. Oliver refinanced in November of 1982.
The trial court also addressed the formula by which the parties' various reimbursement claims were to be computed. Both parties claimed that they had expended their separate funds to pay community debts. These claims included the parties' stipulated claims against each other ($29,903 for Mr. Oliver and $2,339.25 for Mrs. Oliver), as well as Mr. Oliver's claim for reimbursement of his separate funds in the amount of $3,766.17, representing interest payments on the loan at CNB. Based upon this court's rationale in Nash v. Nash, 486 *911 So.2d 1011 (La.App. 2d Cir.1986), the trial court found that each spouse was entitled to be reimbursed in the amount of one-half of each claim from the mass of the community estate instead of full reimbursement.
The court also granted Mrs. Oliver legal interest on her share of the community estate (except for the immovable property) from the date of the termination of the community. Specifically, the trial court found that the community estate upon which the interest was owed consisted of the stipulated Riley-Beaird funds of $382.93, the stipulated cash values of certain life insurance policies of $573.50, and the $5,000 withdrawal previously discussed.
In its written opinion, the trial court divided the property between the spouses. Mr. Oliver was awarded full ownership of their Shreveport home, including the mortgage obligation. He was also awarded the balance of $382.93 in the Riley-Beaird credit union account, plus all community interest in life insurance policies acquired during the marriage and the previously mentioned $5,000.
The court further directed that Mrs. Oliver was to receive from Mr. Oliver an equalizing sum of money, including interest, to be computed by the attorneys. (In the judgment, this equalizing sum was computed as $21,555.35.) The court directed that Mr. Oliver pay to Mrs. Oliver $7,000 in cash and the balance of the equalizing sum in a note. Judgment in conformity with this opinion was signed on April 17, 1989.
Mr. Oliver appealed suspensively. He assigned as error the following: (1) the trial court erred in (a), ordering reimbursement to Mr. Oliver from the community of acquets and gains, and (b) in limiting his reimbursement to only one-half of the separate funds he used to satisfy community obligations; (2) the trial court erred in overruling his exception of prescription as to the $5,000 withdrawal he made on September 20, 1982; and (3) the trial court erred in awarding Mrs. Oliver legal interest on her undivided interest in the community from the date the community terminated on September 23, 1982, until paid.
Mrs. Oliver answered the appeal. She assigned as error the following: (1) the trial court's failure to require Mr. Oliver to account for all of his withdrawals of community funds; (2) Mr. Oliver's failure to account for his salary of $13,500; and (3) the trial court's classification of $3,766.17 in interest payments on the CNB loan as a community debt. In brief, Mrs. Oliver refers to her first two assignments of error only in her response to the prescription issue.

REIMBURSEMENT
Mr. Oliver argues that the trial court erred when it ordered that he receive reimbursement from the community, rather than from Mrs. Oliver, of one-half of the separate funds he used to satisfy community debts, which consisted primarily of mortgage payments on the family home. In so ordering, the trial court observed that it was bound by this court's decision in Nash v. Nash, supra. In Nash, this court adopted the rationale in Gachez v. Gachez, 451 So.2d 608 (La.App. 5th Cir.1984), writ denied, 456 So.2d 166 (La.1984). Mr. Oliver argues that Gachez improperly applied L.C.C. Art. 2365. We agree.
The applicable articles are LSA-C.C. Art. 2336, 2358 and 2365 which provide as follows:
Art. 2336. Ownership of community property

Each spouse owns a present undivided one-half interest in the community property. Nevertheless, neither the community nor things of the community may be judicially partitioned prior to the termination of the regime.
During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse acquires are separate property. The partition is effective toward third persons when filed for registry in the manner provided by Article 2332. [Emphasis ours] *912 Art. 2358. Claims for reimbursement between the spouses

Upon termination of the community property regime, a spouse may have against the other spouse a claim for reimbursement in accordance with the following provisions. [Emphasis ours].
Art. 2365. Satisfaction of community obligation with separate property
If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.

Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets. [Emphasis ours]
In Gachez, supra, the Fifth Circuit ignored Art. 2358. The court simply held that under Art. 2365 a spouse was entitled to reimbursement from the community assets of one-half of the amount of separate funds expended on mortgage payments on the family home, a community debt. The court acknowledged that the spouse seeking full reimbursement, rather than one-half, had cited several cases in support of his argument.[1] However, the court found that those cases arose "prior to the enactment of C.C. art. 2365 and codification of the law relating to one-half reimbursement."
Interpretation of the Civil Code articles governing reimbursement between spouses upon termination of the community has been addressed by various law review commentators. The rationale in Gachez in particular has invited scrutiny by legal scholars. See Spaht, "Developments in the Law, 1984-1985Matrimonial Regimes", 46 L.L.R. 559, 565-566 (1986).
A recently published commentary discussed reimbursement calculations as follows:
"By the allocation of assets and liabilities and necessary adjustments, each spouse is to receive one-half of the net value of the community. For purposes of reimbursement, it is after that calculation that reimbursement claims can be asserted. It is improper to deduct a reimbursement claim from the total net value of the community assets. The claim for reimbursement is a personal right asserted by one spouse against the other, not against an entity called the community. Secondly, the amount of reimbursement is one-half of the amount expended, rather than the total amount. The limitation [provided in the last paragraph of Art. 2365] imposed upon the claim for reimbursement was not intended to permit the claim to be asserted against the total net community. It was intended to permit reimbursement only if the spouse from whom it was claimed had a share of former community property that was sufficient to satisfy the claim." (emphasis supplied)
K. Spaht and L. Hargrave, Matrimonial Regimes § 7.14, p. 285 in 16 Louisiana Civil Law Treatise, (1989).
The various courts of appeal have differed in their application of Gachez. It has been cited with approval by this circuit in Gilley v. Ketchens, 478 So.2d 638 (La.App. 2d Cir.1985); Nash, supra; and Kaplan v. Kaplan, 522 So.2d 1344 (La.App. 2d Cir. 1988). Its rationale was also applied in *913 Freeman v. Freeman, 552 So.2d 636 (La. App. 2d Cir.1989). However, those cases simply relied upon Gachez and a literal reading of Arts. 2365 or 2367 (a companion reimbursement article concerning the use of separate property to acquire or benefit community property) with no analysis of the reasons for the rule or its application in conjunction with C.C. Art. 2358 and prior jurisprudence.
However, in Davezac v. Davezac, 483 So.2d 1197 (La.App. 4th Cir.1986), the Fourth Circuit specifically declined to follow Gachez because of its erroneous interpretation of Art. 2365. The court discussed Art. 2365 and a line of cases in the jurisprudence which included Kennedy and Lentz, supra:
"Although this article, a part of the 1979 revision of our law on matrimonial regimes, was not in existence when the cited cases arose, we do not consider them to be inconsistent with the article. As we read it appellant is entitled to be reimbursed one-half of the payments he made out of appellee's share of the community. The article would seem to prevent reimbursement in this case if there were no community assets but it does not purport to direct reimbursement to appellant from the mass of the community. To adopt appellee's interpretation would lead to the inequitable result of appellant being "reimbursed" for one-half of the amounts he paid from funds of which he owns half. The net result would be that he would pay seventy-five percent of the payments to maintain a community asset from which the wife would eventually derive one-half of the proceeds.
We agree with appellee that the Gachez case supports her position. However, for the reasons stated we have concluded that Gachez is incorrect in its interpretation of Art. 2365 and we decline to follow the case. Therefore, this portion of the trial court's judgment is to be amended to provide that reimbursement to appellant for one-half of the mortgage payments shall be made from appellee's share of the assets of the former community."[2]
In Sellers v. Landry, 489 So.2d 440 (La. App. 3rd Cir.1986), the Third Circuit agreed with the conclusion reached in Davezac. It held that the spouse seeking reimbursement was entitled to full reimbursement from the gross community assets or one-half of the value of the expended separate property from the other spouse's one-half of the divided community assets. The court noted that the result would be the same in either case.[3]
In Williams v. Williams, 509 So.2d 77 (La.App. 1st Cir.1987), the First Circuit adopted the holding in Sellers, supra. It found that, while Art. 2365 stated that a spouse was entitled to reimbursement of one-half of the separate funds used to pay community debts, Art. 2365 "does not purport to direct reimbursement to appellant from the mass of the community." As in Sellers, supra, the court approved full reimbursement from the gross community funds or one-half reimbursement from the other spouse's one-half of the gross community assets following their division between the spouses.
We further note that the Fifth Circuit, which handed down Gachez, recently cited Williams, supra, with approval in Cabral v. Cabral, 543 So.2d 952 (La.App. 5th Cir. 1989), writs denied, 548 So.2d 328, 332.[4] In a discussion of Arts. 2365 and 2367, the court noted: "It has further been held that the reimbursement of one-half of the separate property used for community purposes is to be made from the other spouse's one-half interest in the community, rather than from the total mass of community property, *914 Williams v. Williams [citation omitted]."[5]
Articles 2336, 2358, and 2365, as laws in pari materia, must be construed and read together. Art. 2336 provides that the community of acquets and gains is not a legal entity, but a patrimonial mass. The patrimony of each spouse includes only an undivided one-half of the mass of the community property during the existence of the regime. Furthermore, Art. 2358 provides that the reimbursement claims are made between the spouses, not against "the community." In Art. 2365 it is established that a spouse is entitled to reimbursement of one-half. We find that the correct interpretation of these articles mandates recovery from Mrs. Oliver, to the extent of community assets, of one-half of Mr. Oliver's separate property which was used to pay community debts of $29,903.00. We hereby acknowledge that Nash, supra, and its progeny, to the extent that they adopted Gachez's erroneous interpretation of the reimbursement articles, contain error which we can no longer follow.
Furthermore, in the interest of justice, we apply the corrected reimbursement formula to both parties. Thus, Mrs. Oliver is entitled to reimbursement of one-half of the stipulated amount of $2,339.25 from Mr. Oliver's half of the community. LSA-C.C.P. Art. 2164.

PRESCRIPTION AND COMMUNITY ASSETS WITHDRAWN BY MR. OLIVER
Mr. Oliver argues that the trial court erred when it refused to sustain the exception of prescription as to the $5,000 withdrawal which he made on September 20, 1982. Mrs. Oliver contends that the trial court erred in not requiring Mr. Oliver to account for more of the community funds which he withdrew from various accounts prior to termination of the community.
LSA-C.C. Art. 2369 provides:
A spouse owes an accounting to the other spouse for community property under his control at the termination of the community property regime.
The obligation to account prescribes in three years from the date of termination of the community property regime.
In its ruling, the trial court relied upon Huckabay v. Huckabay, 485 So.2d 165 (La. App. 2d Cir.1986), appeal after remand, 514 So.2d 732 (La.App. 2d Cir.1987), which discussed Art. 2369. In accordance with the holding in Huckabay, supra, the trial court held that the three year prescriptive period provided in that article applied only to acts occurring before the termination of the community of acquets and gains.
The trial court noted that Mr. Oliver's bank statement showed that on September 20, 1982, he had withdrawn $5,000, apparently for himself. The trial court found that, more probably than not, Mr. Oliver still had this money in his possession after the termination of the community on September 23, 1982. Therefore, the ten year prescriptive period applied, and Mr. Oliver was required to account for this sum of money. An examination of Mr. Oliver's financial records persuades us that the trial court did not err in this regard.
Furthermore, we find no merit in Mrs. Oliver's claims that Mr. Oliver retained other community funds. Again we note that examination of the financial records indicates that the Olivers had substantial debts and financial responsibilities which Mr. Oliver paid, utilizing the community funds he withdrew prior to the termination of the community. We find no error in the trial court's implicit finding that Mr. Oliver had made a proper accounting of his use of the remaining community funds.
This assignment of error has no merit.

INTEREST
Mr. Oliver argues that the trial court erred in awarding Mrs. Oliver legal interest on her one-half of the sum of $6,000 from the date of the termination of the community, rather than from the date *915 of judicial demand.[6] We find merit in this assignment of error.
The trial court relied upon Hodson v. Hodson, 292 So.2d 831 (La.App. 2d Cir. 1974), writ denied 295 So.2d 177 (La.1974), and Fouchi v. Fouchi, 487 So.2d 496 (La. App. 5th Cir.1986), writ denied, 493 So.2d 636 (La.1986). Those cases further hold that settlement of a community estate is due, demandable, and payable as of the date of the community's dissolution. Those cases further hold that interest at the legal rate is due from the date of the termination of the community.
However, in Abraham v. Abraham, 233 La. 808, 98 So.2d 197 (1957), the Louisiana Supreme Court held that legal interest is due only from the date of judicial demand namely, the date upon which the spouse brought suit for an accounting and settlement of the community. As we are bound to follow this decision by a higher court, we hereby award legal interest from the date Mrs. Oliver filed her petition for judicial partition of the community property on June 15, 1987.

LOAN INTEREST PAYMENTS
Mrs. Oliver argues that the trial court erred in recognizing as a community debt the interest payments of $3,766.17 paid by Mr. Oliver on the renegotiated CNB loan. The evidence demonstrated that the CNB loan was taken out by Mrs. Oliver on February 5, 1982, to pay off community debts. In November of 1982, (after the termination of the community), the bank gave Mr. Oliver the option of either renewing the note in his own name or paying off the loan. He chose to renew it. Mr. Oliver paid $3,766.17 in interest payments. The note was stamped "paid" on September 6, 1988. The trial court found that this sum paid by Mr. Oliver was a community obligation and that he was entitled to a reimbursement claim.
We agree with the trial court. Although Mr. Oliver did not consult Mrs. Oliver prior to renewing the note, his actions were obviously in the best interest of the community. The evidence fails to demonstrate that Mr. Oliver intended to create a new separate obligation. To the contrary, he was merely maintaining the status quo on payment of an already existing community debt. To find otherwise would be to ignore the financial reality facing a solidary obligor in Mr. Oliver's position. Also, see Michel v. Michel, 484 So.2d 829, 832 (La.App. 1st Cir.1986).
We find no merit in this assignment of error.

CONCLUSION
Accordingly, we amend and affirm as amended. The judgment is hereby amended to provide that reimbursement to each spouse shall be made from the other spouse's one-half share of the community and that legal interest is awarded to Mrs. Oliver on her one-half of $6,000 from the date of judicial demand, June 15,1987, until the date of this opinion. Therefore, the judgment of the trial court is amended and recast, in part, as follows:
IT IS DECREED that the computation for the award hereafter made is computed as follows:

 Value of home $56,750.00
 Less: Mortgage (-8,610.78)
 -----------
 Balance of equity in
 home $48,139.22
 Riley-Beaird Credit
 Union 382.93
 Cash values in life insurance
 policies 573.50
 Funds in possession
 of Mr. Oliver and
 unaccounted for +5,000.00
 ---------
 Total assets $54,095.65
 Total community divided
 by 2 = $27,047.82

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that JOE ANN COTTON OLIVER be the owner of the following community property:

(1) Mrs. Oliver's half of
 community $27,047.82
(2) Reimbursement claim
 ($2,339.25 divided by 2) 1,169.63

*916
(3) Interest at judicial rate
(LSA-C.C. 2924) on JOE
ANN COTTON OLIVER'S
one-half (1/2) interest of
$6,000 (rounded off) from
date of filing of suit for
judicial partition on June
15, 1987, until date of this
opinion. + 976.25
 ----------
 $29,193.69
Less: Mr. Oliver's claim
for reimbursement
($33,669.25 divided by 2) - 16,834.62
 ------------
 $12,359.08

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JOE ANN COTTON OLIVER and against JAMES E. OLIVER ordering him to pay unto her the sum of TWELVE THOUSAND THREE HUNDRED FIFTY-NINE AND .08/100 ($12,359.08), due and payable in a note bearing interest at the rate of twelve percent (12%) per annum from the date of this judgment, in 120 consecutive, equal monthly installments with the first payment being due and payable on July 1, 1990, said note to have no prepayment penalty and to provide for 15 percent attorney fees in the event of default.
In all other respects, the judgment of the trial court is affirmed. Costs are assessed one-half to each party.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The husband cited Lentz v. Lentz, 411 So.2d 59 (La.App. 4th Cir.1981); Kennedy v. Kennedy, 391 So.2d 1193 (La.App. 4th Cir.1980), writ refused, 396 So.2d 883 (La.1981) overruled on other grounds, 460 So.2d 641 (La.App. 4th Cir. 1984); and Butler v. Butler, 228 So.2d 339 (La. App. 1st Cir.1969). In Lentz, supra, the husband was granted reimbursement of one-half from his wife's share of the community funds. In Kennedy, supra, the court relied upon language in Butler, supra, to award full reimbursement from community funds. We note that this court adopted the reasoning of the Kennedy case in Michael v. Michael, 415 So.2d 229 (La.App. 2d Cir.1982).
[2] The Fourth Circuit has more recently followed the Davezac case in Mara v. Mara, 513 So.2d 1220 (La.App. 4th Cir.1987), writ denied 517 So.2d 813 (La.1988).
[3] Counsel for Mrs. Oliver has also cited the case of Young v. Young, 549 So.2d 437 (La.App. 3rd Cir.1989). There the Third Circuit, without discussion, held that under LSA-C.C. Art. 2367 a spouse was entitled to reimbursement from the community of one-half the value of his separate property which was used to acquire community property.
[4] In its writ denial, the Supreme Court stated (as it did in Gachez, supra) "The result is correct."
[5] The Second Circuit has also cited the Williams and Davezac cases with approval in Dilley v. Dilley, No. 21,401-CA, (La.App. 2 Cir.1990) also rendered this day.
[6] The sum of $6,000 includes the Riley-Beaird credit union funds of $382.93, the value of the life insurance policies of $573.50, and the withdrawal of $5,000. In the judgment, the trial court rounded off the total of these figures to $6,000 for purposes of computing the interest.